George A. HALE, Jr. *v.* Cheryl J. HALE

91-96                                    822 S.W.2d 836

Supreme Court of Arkansas
Opinion delivered January 13, 1992

*Reid, Burge, Prevallet & Coleman*, by: *Robert L. Coleman*, for appellant.

*Fendler, Gibson & Bearden*, by: *Mike Bearden*, for appellee.

ROBERT L. BROWN, Justice. The primary issue before us is whether a 119-acre farm given to the appellant, George A. Hale, Jr., by his parents during his marriage to the appellee, Cheryl J. Hale, and then used as collateral for a consolidated debt loan to both parties, constituted property that could be sold to satisfy all marital debt. The chancellor held that it could be, and the appellant appeals on grounds that this was error. We affirm the chancellor's decision in part, but reverse and remand on other grounds.

The parties married in 1965, while both were attending college, and remained married for twenty-five years. Throughout their marriage, both husband and wife worked with the exception of about 2 1/2 years when Cheryl Hale obtained a higher degree in her profession of nursing. In 1975 the Hales moved to Mississippi County, where George Hale bought a 39-acre farm near his family's farm. During their marriage George Hale farmed, and his parents, as part of their estate plan, made various gifts to him, including a 119-acre tract of farm land which is the subject of this appeal, an undivided one-third interest in 163.2 acres of farm land, and residential property consisting of 1.3 acres. They also made a joint gift to the Hales which consisted of 3.1 acres. The Hales took title to the 3.1 acres as tenants by the entirety, and built their home on this land.

In 1980, George Hale experienced difficulties in his farming operation due to a drought, and in 1985 he sold his one-third interest in the 163.2 acres for $44,000 and applied that money to pay joint debts. In 1986, he was forced to leave farming altogether. In September 1987, the parties consolidated their

debts into a $170,000 loan from Consolidated Federal Savings & Loan and used the 3.1 acres held as tenants by the entirety, the 39 acres that George Hale purchased during their marriage, and George Hale's 119-acre gift property as collateral for the loan. In March 1989, Cheryl Hale left her husband and ceased contributing to payment of the joint debt. George Hale continued to make the debt payments until August 1990, when his tenants vacated the property and the rental income stopped.

Cheryl Hale filed for divorce on January 17, 1990, and the divorce was granted on December 21, 1990. As part of the proceedings, the chancellor had all of the real property appraised, including marital and non-marital property, and the property held as tenants by the entirety, and ordered that the property be sold to satisfy the parties' consolidated debt loan and other marital debts. The chancellor further apportioned marital and non-marital property and ordered that the parties share equally in the surplus apportioned to marital property and that George Hale take all of the surplus apportioned to his non-marital property. The 3.1 acres on which the home was built, which was held by the parties as tenants by the entirety, was classified as marital property. The 119-acre gift property was classified as George Hale's non-marital property. The chancellor's order established the following procedure for satisfying marital debt and disbursing surplus funds:

14. The Court, therefore, finds and concludes:

(1) The 1.3-acre tract given to Defendant in 1976 is declared to be non-marital and of no consequence in this decision;

(2) The 119-acre tract given to Defendant in 1969 is also found and declared to be non-marital; however, it will be sold in order to retire the debts of the parties;

(3) The 39-acre tract is declared to be marital property and will be sold to pay marital debts;

(4) The 3.1-acre tract and home is declared to be marital property and will be sold to pay marital debts;

. . .

16. The Court further finds that . . . if there is any

deficit owed to any of the creditors described hereinabove after the sale of the property described herein, the Court declares that both parties are equally responsible for the debts; this is not a declaration changing the status of the creditors; it is simply a declaration charging both of these parties with the payment of the debts; if there is a surplus after the payment of said debts, then said surplus will be divided between the parties by utilization of the appraisals; the home was appraised for $92,500.00, and it is marital property; the 39 acres was appraised for $40,950.00, and it is marital property; the 119 acres was appraised for $124,950.00, and it is non-marital; the total value of all real property shown by appraisals is $258,400.00, and of this amount, $133,450.00 is marital, representing approximately fifty-two percent (52%) of the total, and $124,950.00 is non-marital, representing approximately forty-eight percent (48%) of the total; therefore, as to any surplus after sale of the property and payment of all debts, the parties will equally share fifty-two percent (52%) of any surplus, and the Defendant will be entitled to receive as his sole property forty-eight percent (48%) of any surplus. . . .

It is from this order as it applies to the 119 acres that the appellant raises this appeal.

We turn first to the statute that discusses division of marital and non-marital property.

   (a)   At the time a divorce decree is entered:

   (1) (A)   All marital property shall be distributed one-half ($^1/_2$) to each party unless the court finds such a division to be inequitable. In that event the court shall make some other division that the court deems equitable taking into consideration:

   (i)   The length of the marriage;

   (ii)   Age, health, and station in life of the parties;

   (iii)   Occupation of the parties;

   (iv)   Amount and sources of income;

    (v)    Vocational skills;

    (vi)    Employability;

    (vii)    Estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income;

    (viii)    Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and

    (ix)    The federal income tax consequences of the court's division of property.

    **(B)**    When property is divided pursuant to the foregoing considerations the court must state its basis and reasons for not dividing the marital property equally between the parties, and the basis and reasons should be recited in the order entered in the matter.

    (2)    All other property shall be returned to the party who owned it *prior to the marriage* unless the court shall make some other division that the court deems equitable taking into consideration those factors enumerated in subdivision (a)(1), in which event the court must state in writing its basis and reasons for not returning the property to the party who owned it at the time of the marriage.

. . .

    (b)    For the purpose of this section, "marital property" means all property acquired by either spouse subsequent to the marriage except:

    (1)    Property acquired prior to marriage, or by *gift*, or by bequest, or by devise, or by descent;

. . .

Ark. Code Ann. § 9-12-315(a)(1) and (2), (b) (Supp. 1991). (Emphasis ours.)

    George Hale argues that though the property division statute gives the chancellor latitude and discretion in reaching an equitable result, this pertains only to the division of marital

property or property acquired by a party prior to marriage and has no bearing on gifts acquired during marriage. The 119 acres were clearly acquired by the appellant by gift during marriage, and the chancellor correctly found that the 119 acres constituted non-marital property. But he further ruled that the acreage should be sold in satisfaction of the consolidated debt and other marital debts as well.

The issue before us, then, is whether the chancellor had the discretion to order the sale of this non-marital property to satisfy all marital debts. We hold that his discretion was properly exercised regarding satisfaction of the consolidated debt loan but not with respect to other marital debts.

The appellant is correct that Ark. Code Ann. § 9-12-315(a)(2) provides for an equitable division of non-marital property given prior to marriage but does not make the same provision for gift property received during marriage. Were we to hold that the statute authorized a chancellor to divide non-marital gift property, we would be adding words to the statute that simply are not there. In prior cases, we have specifically refused to expand the property-division statute judicially to authorize the chancellor to divide non-marital property acquired by gift during marriage. Rather, we have limited the discretion of the chancellor under the statute to the division of property acquired prior to marriage, as the statute provides. See *Williford* v. *Williford*, 280 Ark. 71, 655 S.W.2d 398 (1983); *see also Smith* v. *Smith*, 32 Ark. App. 175, 798 S.W.2d 443 (1990); *Yockey* v. *Yockey*, 25 Ark. App. 321, 758 S.W.2d 421 (1988). We have previously held that property received by descent, apparently during marriage, is not subject to division in a divorce action. *See Farris* v. *Farris*, 287 Ark. 479, 700 S.W.2d 371 (1985). Since property acquired by descent and property acquired by gift are both set out as exceptions to marital property in § 9-12-315(b), George Hale argues that the *Farris* holding should govern the case before us.

As stated, we agree with the appellant that the statute does not authorize a chancellor to divide gift property received by one spouse during marriage. Nevertheless, in this case George Hale took his 119 acres and volunteered it as security for the consoldiated debt loan made by Commonwealth Federal. The

chancellor recognized this agreement in his order when he stated that the case involves "the equitable distribution of marital debts and the utilization of marital *as well as non-marital property given as collateral for some or all of those debts.*" (Emphasis ours.) Although he did not have statutory authority to divide this gift property, it was appropriate for the chancellor to consider this mortgage agreement when considering payment of the marital debt owed to Commonwealth Federal. *See Hackett* v. *Hackett*, 278 Ark. 82, 643 S.W.2d 560 (1982); *see also Riegler* v. *Riegler*, 243 Ark. 113, 419 S.W.2d 311 (1967). Because of the mortgage agreement, we affirm the chancellor's order to apply the 119 acres to satisfy the Commonwealth Federal debt.

■ The same does not hold true for the chancellor's use of the 119 acres to pay any other marital debts. To the extent that the chancellor's formula provides for the sale of this property to satisfy other marital debts, we reverse on the basis that § 9-12-315 does not authorize the use of gift property received during marriage to be used for payment of such debts.

George Hale further challenges the chancellor's formula in that it contemplates paying Cheryl Hale 26% of any surplus funds after payment of the marital debts. He is correct that the chancellor's formula provides for a sale of all marital and non-marital property to satisfy these debts, and that after payment the parties would share in any surplus. The chancellor determined that George Hale should receive 48% of surplus funds which was his distribution based on his non-marital property, and that he and Cheryl Hale should divide 52% of any surplus which would be the funds apportioned to marital property. Cheryl Hale would, therefore, be entitled to 26% of any surplus as her share of the surplus due to marital property. It is the potential that Cheryl Hale might share in the surplus generated from the sale of his non-marital property that George Hale finds particularly objectionable.

■ The court's order assigns the 119 acres an appraised value of $124,950; the 39 acres a value of $40,950; and the 3.1 acres, which was the homestead, a value of $92,500. The consolidated debt loan approximated $173,000 at time of divorce. We can conceive of a situation where the sale of the 119 acres might occasion surplus funds in which Cheryl Hale would have a

26% interest. For example, were the 39 acres and 3.1 acres sold first to satisfy the consolidated debt loan, that would result in a substantial part of the proceeds from the sale of the 119 acres being distributed under the formula as surplus. Cheryl Hale, therefore, would receive 26% of those proceeds, which as non-marital property, should go exclusively to George Hale. George Hale only mortgaged this acreage to secure the consolidated debt loan. It was not his intent to vest in his wife any interest in the surplus funds. Because that potential exists in this case, we reverse and remand for the chancellor to apportion the surplus funds in a manner which protects the appellant's interest in those funds.

■ While neither party raises the point, the chancellor also included property held by the entirety — the 3.1 acre homestead — and designated it as marital property under his formula, applying the same percentages for the distribution of any surplus. This is error, since we have previously held that Ark. Code Ann. § 9-12-315 is not applicable to property held as tenants by the entirety. *See Warren* v. *Warren*, 273 Ark. 528, 623 S.W.2d 813 (1981). Here, again, the potential exists under the formula for there to be an unequal division of entirety property depending on whether the proceeds from the sale of the homestead are applied to payment of marital debt or distributed as surplus to the parties. If distributed as surplus funds, an unequal division would occur under the formula. We reverse the chancellor on this point and remand the case for reconsideration of his formula in light of this opinion. *See Wilson* v. *Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987).

For his final argument George Hale contends that, in the event we decide his gift property was appropriately applied to pay marital debt, we should also include Cheryl Hale's inheritance to be received from her father's estate. Our holding does not stand for the general proposition that gift property during marriage may be used to satisfy marital debt, but rather we have held that the 119 acres was appropriately applied to pay the consolidated debt loan because George Hale specifically mortgaged the property to secure that loan. We, therefore, do not reach the issue of Cheryl Hale's inheritance.

Affirmed in part; reversed in part and remanded.

DUDLEY and NEWBERN, JJ., concur.

ROBERT H. DUDLEY, Justice, concurring. I concur in the result reached in the majority opinion, but do not agree with the reasoning expressed in it.

This case involves the interpretation of Ark. Code Ann. § 9-12-315 (1987), the statute providing for the division of property upon divorce. The holding of the majority opinion is that by mortgaging his 119 acres of non-marital property, the appellant converted his non-marital property into security for a marital debt and relinquished any protected status for this property that he might have had under the division of property statute.

The cited statute provides for division of non-marital property upon divorce, but it does not provide for non-marital property becoming subject to marital debt upon the execution of a mortgage. The majority opinion admits that the Chancellor "did not have statutory authority to divide this gift property," but then affirms its division. For its authority the majority opinion cites the cases of *Hackett* v. *Hackett*, 278 Ark. 82, 643 S.W.2d 311 (1982) and *Riegler* v. *Riegler*, 243 Ark. 113, 419 S.W.2d 311 (1967). Neither case provides such authority. The *Riegler* case was decided long before the marital property statute was adopted, and the case simply does not discuss the issue, or anything close to it, even in dicta. Likewise, the *Hackett* case does not support the majority opinion. It provides that a Chancellor should consider the parties' debts when dividing *marital* property, with which I wholly agree, but that is not the issue in the case before us. The issue in this case is whether a Chancellor can make *non-marital* property acquired during the marriage subject to division between the parties because of a *marital* debt to a third party.

The power to deprive a spouse of his or her non-marital property, as provided in the majority opinion, is wholly a judicially created power. The majority opinion admits this. Such a judicially created power in a divorce proceeding is contrary to our law, for we have long held that in divorce proceedings courts of equity are bound by statutory law and cannot exercise their inherent chancery powers. *Hatcher* v. *Hatcher*, 265 Ark. 681, 580 S.W.2d 475 (1979); *Wheat* v. *Wheat*, 229 Ark. 842, 318 S.W.2d 793 (1958); *Young* v. *Young*, 207 Ark. 36, 178 S.W.2d 994 (1944); *Ex parte Helmert*, 103 Ark. 571, 147 S.W.2d 1143

(1912). There is no other case in which we have judicially created divorce property division law.

Further, it seems that the majority opinion is internally inconsistent in this regard. It states that, under the statute, non-marital property acquired during the marriage is not subject to division. If it is not subject to division under the statute, it cannot be divided, because the divorce statute is the only basis of jurisdiction over the non-marital property.

In addition, it seems that the majority opinion creates some very practical problems. This judicially created power is not fully developed, and it is not clear how far it extends. It is not directly related to the marital debt, but, instead, is related only to the security given for the marital debt. Does this mean that it also comes into being when one gives a security interest on non-marital personal property, when one creates an equitable lien on similar property, or when one signs a guaranty agreement for a credit card? Does it apply if the property was acquired by devise as well as by gift?

While I do not agree with the reasoning of the majority opinion, I concur in the result because the applicable statute provides for just such a division of property. The applicable statute, Ark. Code Ann. § 9-12-315 (Supp. 1991), in pertinent part, provides:

DIVISION OF PROPERTY.

(a)   At the time a divorce decree is entered:

(1) (A)   All marital property shall be distributed one-half ($^1/_2$) to each party unless the court finds such a division to be inequitable. In that event the court shall make some other division that the court deems equitable taking into consideration:

(i)   The length of the marriage;

(ii)   Age, health, and station in life of the parties;

(iii)   Occupation of the parties;

(iv)   Amount and sources of income;

(v)   Vocational skills;

(vi) Employability;

(vii) Estate, *liabilities* and needs of each party and opportunity of each for further acquisition of capital assets and income;

(viii) Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and

(ix) The federal income tax consequences of the court's division of property.

(B) When property is divided pursuant to the foregoing considerations the court must state its basis and reasons for not dividing the marital property equally between the parties, and the basis and reasons should be recited in the order entered in the matter.

(2) *All other property shall be returned to the party who owned it prior to the marriage unless the court shall make some other division that the court deems equitable* taking into consideration those factors enumerated in subdivision (a)(1), in which event the court must state in writing its basis and reasons for not returning the property to the party who owned it at the time of the marriage. [Emphasis added.]

The majority opinion reasons that since section (a)(2), quoted above, does not mention non-marital property acquired during the marriage, it must be excluded. I cannot agree and do not think that such an opinion is in conformity with legislative intent for two reasons.

First, there is no logic or reason for making a distinction between non-marital property acquired before marriage and that acquired after marriage, and we should not assume the legislative intent was to create a distinction without a rational basis. Further, while not addressing this precise issue, the court of appeals has discussed in general the issue of division of non-marital property but has never indicated that such a distinction might even possibly exist. *See Smith* v. *Smith*, 32 Ark. App. 175, 798 S.W.2d 443 (1990) and *Pennybaker* v. *Pennybaker*, 14 Ark. App. 252, 687 S.W.2d 524 (1985). The reason seems clear; there

is no basis for such a distinction. In the same light, in *Williford* v. *Williford*, 280 Ark. 71, 76, 655 S.W.2d 398, 401 (1983), we wrote, "It should be noted that the chancellor is given broad powers under § 34-1214 [now Ark. Code Ann. § 9-12-315] to distribute *all* property in divorce, *non-marital as well as marital*, to achieve an equitable division." (Emphasis supplied.)

Second, and more importantly, the legislature, in section (b)(1), clearly expressed its intent that all gifts, regardless of when acquired, are to be considered non-marital property:

> (b)   For the purpose of this section, "marital property" means all property acquired by either spouse *subsequent to the marriage except:*
>
> (1)   Property acquired prior to the marriage, *or by gift*, or by bequest, or by devise, or by descent; . . . .

Ark. Code Ann. § 9-12-315(b)(1) (Supp. 1991) (emphasis added).

A fair reading of the statute as a whole clearly demonstrates that the legislature intended to create only two classes of property, marital and non-marital. It intended that the division of property statute would deal with those two classes. There is no language in the statute which creates a third class, non-marital property which is subject to a mortgage securing marital debt. Instead, the applicable division of property statute was intended to apply to non-marital property acquired both before and after marriage. Accordingly, I concur with the result reached in the majority opinion, but do so only because the statute encompasses such a result.

Some of the language, and perhaps part of the holding, in *Farris* v. *Farris*, 287 Ark. 479, 700 S.W.2d 371 (1985), is inconsistent with the majority opinion as well as this concurrence. While this precise point was not argued there, I would overrule *Farris* to the extent that it might be inconsistent.

NEWBERN, J., joins in this concurrence.