Robert M. MATHIS *v.* Charlene J. MATHIS

CA 94-1154                                  916 S.W.2d 131

Court of Appeals of Arkansas
En Banc
Opinion delivered February 28, 1996

*Mashburn & Taylor*, by: *Scott E. Smith* and *Bill Putman, Jr.*, for appellant.

*Schrantz & Boyer, P.A.*, by: *Johnnie Emberton Rhoads*, for appellee.

JOHN B. ROBBINS, Judge. Appellant Robert M. Mathis and appellee Charlene J. Mathis were married on March 18, 1983, and divorced February 11, 1994. The only pertinent dispute arising out of the divorce involved Mr. Mathis's retirement fund. Mr. Mathis worked for Southwestern Bell for twenty-eight years before retiring, and was married to Mrs. Mathis for the last eight of those years. When he retired, he received a lump sum of approximately $446,000 representing the cash value of his pension benefits and savings plan. These funds were initially deposited into a joint account with Mrs. Mathis. Within sixty days thereafter, Mr. Mathis withdrew and placed approximately $392,500 of these funds in IRAs under his individual name. At trial, Mr. Mathis contended that Mrs. Mathis was not entitled to half of these accounts, but rather was only entitled to one-half of the funds in these accounts that had accrued over the eight-year period he was working during their marriage. The trial court disagreed, finding that these accounts constituted funds held as tenants by the entirety. The trial court awarded one-half of the IRAs to Mrs. Mathis, and Mr. Mathis now appeals.

The evidence presented at trial shows that Mr. Mathis and Mrs. Mathis lived together in Oklahoma and that Mr. Mathis retired there on December 31, 1991. The couple later relocated

to Arkansas. Upon retirement, Mr. Mathis elected to receive his retirement pension benefits in a lump sum. However, in order to receive such lump sum, Mrs. Mathis was required to execute a release of her survivor rights. Mrs. Mathis signed a release to this effect, and Mr. Mathis received cash payments totaling approximately $446,000.

As each cash payment was received, Mr. Mathis placed it in bank accounts held in his and Mrs. Mathis's joint names. Later, he removed approximately $392,500 of these funds and placed the funds in three IRAs that were held solely in his name. Mr. Mathis testified that it was never his intention to give Mrs. Mathis half of these funds and that he temporarily placed the money in joint bank accounts only until he could roll it over into IRAs in his sole name. He asserted that Mrs. Mathis would not sign a release for him to receive a lump sum distribution unless the money was placed in a joint bank account. Mathis also stated that, in return for the release, he granted Mrs. Mathis a 25% survivorship interest in his IRA and purchased $100,000 worth of life insurance for her benefit.

Mrs. Mathis essentially denied that any such deal was made regarding her release of Mr. Mathis's retirement benefits. She claimed that, prior to the release, Mr. Mathis had forced her out of their home and that she was living with her mother. She stated that she really did not understand the consequences of the release and signed it only because Mr. Mathis promised that she could return home upon signing it. Mrs. Mathis testified that she would not sign the release, however, until she was assured that the money would go into a joint bank account.

For reversal, Mr. Mathis argues that the trial court erroneously concluded that his retirement funds had been held as tenants by the entirety. He asserts that he never intended to give Mrs. Mathis half of these funds and asks that we reverse the chancellor and award Mrs. Mathis only one-half of the portion of these funds that accrued during their marriage.

■■ Ordinarily, a former spouse is entitled to only a one-half interest in any retirement benefits acquired by the other spouse during the course of the marriage. *Askins* v. *Askins*, 288 Ark. 333, 704 S.W.2d 632 (1986). However, once property is placed in the names of persons who are husband and wife, there

is a strong presumption that the property is owned by the parties as tenants by the entirety. *Reed* v. *Reed*, 24 Ark. App. 85, 749 S.W.2d 335 (1988). This presumption may be overcome only by clear and convincing evidence that one spouse did not make a gift of one-half interest to the other spouse. *Id*. Clear and convincing evidence has been defined as evidence so clear, direct, weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitance, of the matter asserted. *Lofton* v. *Lofton*, 23 Ark. App. 203, 745 S.W.2d 635 (1988). This court reviews chancery cases de novo and reverses the chancellor's findings only if they are clearly erroneous or clearly against the preponderance of the evidence. *Cuzick* v. *Lesly*, 16 Ark. App. 237, 700 S.W.2d 63 (1985).

The trial court determined that Mr. Mathis failed to convincingly prove that the IRA accounts, which were funded by monies withdrawn from the parties' joint accounts, did not constitute funds owned by the parties as tenants by the entirety. Both parties agree that Mr. Mathis was permitted to receive his retirement pension benefits in a lump sum only after Mrs. Mathis signed a release. There could be little doubt that, due to marital problems at the time, Mr. Mathis did not want to relinquish half of the funds. However, it appears that this is precisely what he decided to do. Mrs. Mathis told him that she would not sign the release unless he agreed to place the money into a joint tenancy account. Mr. Mathis agreed to this and exhibited an intent to split the lump sum with his wife rather than opt for the monthly payment plan. Mr. Mathis argues, in essence, that he possessed a fraudulent intent rather than a donative intent when he deposited the retirement benefits into their joint account, i.e., that he agreed to the joint tenancy solely as a ruse to obtain his wife's release. We do not believe the trial court was clearly erroneous in finding that Mr. Mathis failed to overcome, by clear and convincing evidence, the presumption imposed by law that he intended to create a true joint tenancy with Mrs. Mathis.

It is also significant that, during the several weeks between the time when the money was placed in the joint account and when Mr. Mathis withdrew the funds and placed them in the IRAs, both parties had access to, and in fact, drew on these funds. This fact, and the fact that the parties agreed that Mrs.

Mathis would execute a release in exchange for Mr. Mathis depositing the retirement funds into a joint account, distinguishes this case from *Jackson* v. *Jackson*, 298 Ark. 60, 765 S.W.2d 561 (1989). In *Jackson* the supreme court affirmed the chancellor's holding that Mrs. Jackson proved by clear and convincing evidence that she did not intend to make a gift to her husband when she deposited non-marital funds into a joint checking account. However, the court relied on the fact that, on the same day of the deposit, Mrs. Jackson wrote a check for the entire amount deposited in order to purchase property from her sister. Unlike the fact situation in the instant case, Mr. Jackson never exercised any access or control over Mrs. Jackson's funds. Moreover, Mr. Jackson did nothing to induce Mrs. Jackson to temporarily deposit the funds in a joint account. In the case at bar, it is undisputed that Mrs. Mathis would not allow Mr. Mathis to receive his lump-sum retirement pay unless he agreed to deposit it in an account bearing both of their names.

We hold that the chancellor's decision in characterizing the retirement funds as tenancy by the entirety property even after Mr. Mathis transferred the funds to the IRAs in his individual name was not clearly erroneous.

Affirmed.

JENNINGS, C.J., PITTMAN and ROGERS, JJ., agree.

COOPER and MAYFIELD, JJ., dissent.

JAMES R. COOPER, Judge, dissenting. I dissent because I do not agree that the chancellor could reasonably conclude on the evidence before him that Mr. Mathis intended to make a gift of a full half-interest in the funds to the appellee. Although the retirement funds, following disbursement, were deposited in the parties' joint bank account and remained there for a few weeks before being transferred to an account belonging solely to the appellant, depositing nonmarital funds into a marital joint account does not necessarily render them forever funds owned by the entirety. *Jackson* v. *Jackson*, 298 Ark. 60, 765 S.W.2d 561 (1989). Instead, such action merely gives rise to a presumption that the funds are owned as tenants by the entirety, and this presumption can be overcome by clear and convincing evidence. *Id.*, *Lofton* v. *Lofton*, 23 Ark. App. 203, 745 S.W.2d 635 (1988).

The question in the case at bar, therefore, is whether the chancellor erred in finding that the appellant failed to overcome the presumption by clear and convincing evidence.

I submit that the chancellor did err for the simple reason that the transaction which led to the funds being deposited in the joint account was so marked by adversity that no reasonable person could possibly conclude that the appellant intended to make a gift to the appellee. Here, the undisputed evidence shows that the parties were estranged prior to the transaction. The appellee's own testimony shows that she was living with her mother prior to signing the release because the appellant forced her to leave the marital home after she refused to sign the spousal release. After the release was signed, she was permitted to return to the marital home.

It was in this context of adversity and coercion that the funds were deposited into the joint account. The majority concludes that this deposit into the joint account exhibited an intent on the part of the appellant to split the lump sum with the appellee, and if depositing nonmarital funds into a joint account necessarily rendered them forever funds owned by the entirety, that conclusion would be logical. However, such a deposit does not have that effect, see, *Jackson* v. *Jackson*, *supra*, but instead merely gives rise to the presumption of a gift. I respectfully submit that, given the adverse, hostile, and coercive nature of the circumstances surrounding the deposit in the case at bar, the majority's conclusion that the appellant intended to make a gift to the appellee defies all logic. I, too, feel sympathy for the appellee in this case, but I believe that, on balance, we do more harm than good when we indulge such sympathies by doing violence to the law.

MAYFIELD, J., joins in this dissent.