James E. COLE *v.* Laverne COLE

CA 95-335                                    920 S.W.2d 32

Court of Appeals of Arkansas
Division III
Opinion delivered April 24, 1996

*Meredith Wineland*, for appellant.

*Sandra Tucker Partridge*, for appellee.

MELVIN MAYFIELD, Judge. James Cole appeals from an order of the Saline County Chancery Court in a divorce action and argues that the chancellor erred in finding the proceeds in a Benton State Bank account, all property purchased by the appellee from this account, and the parties' home to be the separate property of the appellee, Laverne Cole.

The parties were married in August 1971, and separated on April 14, 1994. The divorce was granted on August 8, 1994, after a hearing which specifically reserved issues of alimony and the division of certain personal and real property which the appellee claimed as her separate property.

At the hearing on the reserved issues, the appellee testified that she owned the Hornet Cafe when they were married; that she made all the payments on the cafe from her earnings; that in October 1984, she put the appellant's name on the deed to the cafe on his promise to make a will leaving the property to her children; that appellant never made a will; and that in 1987, she sold the property, opened an account at the Benton State Bank in the name of James and Laverne Cole, and placed the money into that account.

In 1979, the appellee's mother made a gift of sixty acres of family property to her children; a trust was created; and the property was sold through Richardson Place, Inc. Trust. She said she received $258,529.33 from the trust between 1986 and 1993; that she deposited some of the proceeds into the Benton State Bank account, used others to pay directly on a loan, and placed the rest directly into Certificates of Deposit.

In December 1986, the parties purchased a lot and paid for it with Richardson Place money. They began to build a house on the lot in January 1987, and the appellee paid for everything out of the account in the Benton State Bank. The parties borrowed $50,000

from that bank to complete the house because the appellee, who was not working, could not get a loan. The loan proceeds were deposited in the Benton State Bank account and when appellee received a check from the trust she took the check and endorsed it over to that bank to repay the loan. Later, the appellee added to the note to buy a van and to pay the parties' income taxes, and the appellee is still paying on the note.

The appellant was laid off in 1989, and from then until October 1993, when he got a steady job, the appellee used substantial amounts of her distributions from the trust in order to support the parties.

On January 8, 1991, the appellee received a check from the trust in the amount of $15,000 made out to Laverne Cole and purchased a Certificate of Deposit in the names of Laverne or James Cole. On January 25, 1994, the appellee withdrew $17,027.81, representing the initial amount plus accrued interest, from the CD and placed it in a safe-deposit box in her name.

In 1993, the appellant received a settlement of a discrimination lawsuit and told the appellee to buy Wal-Mart stock. The appellee purchased 300 shares of Wal-Mart in their joint names for $8,176.25 and deposited $2,965.76 in the Benton State Bank. Later, appellant bought a riding lawn mower for about $2,000.

The appellee testified that the Benton State Bank account was just for Richardson Place money and the Hornet Cafe; that the parties referred to the account as the Richardson Place money; that she always treated the money as her money; and that until May 1993, when they deposited the "remains" of the settlement money in the account, the only money deposited in the account was the Richardson Place money and the Hornet Cafe money. The appellee said that the appellant's name was on the account so that if something happened to her, he would have something, but that appellant never deposited any money in the account and wrote, at most, four or five checks on the account and only with her permission. She said that the parties had a joint checking account at Superior Federal into which they deposited their wages and from which they paid their bills. However, no house payments were made from this account.

The appellee testified further that the parties always filed joint income tax returns; that the money she received from Richardson

Place had joint income taxes paid on it, but she paid all the taxes out of the Richardson Place money.

The appellant testified that he brought money into the cafe by working and that the appellee could not have made the payments on the cafe if he had not worked to keep "the rest of the place up." He said that he considered the Richardson Place money to be "ours" and that he did not think Richardson Place was a gift from appellee's mother, but thought the appellee and her sisters bought it from their mother.

On this evidence, the chancellor found:

7. That the Court finds that the home is the sole and separate property of the plaintiff, Laverne Cole. That Defendant deeded the home to the Plaintiff, Laverne R. Cole on September 23, 1992, Recorded in Book 364 Page 316, Records of Saline County Circuit Clerk; and there is no evidence to warrant setting aside the deed. That the description of said property is attached hereto as Exhibit "A".

8. That the Court finds that all proceeds from the Richardson Place Trust and the Hornet Cafe which were deposited into Benton State Bank Account Number 51-76387, as well as all property purchased by plaintiff through this account are plaintiff's separate property.

9. That the money defendant received from his settlement and the property that he purchased through this account, Benton State Bank Account Number 51-76387, are his separate property.

10. That the Court finds that even though both names are on the Benton State Bank Account No. 51-76387, it is clear that the plaintiff made the final decision on the use of the Richardson Place Trust funds and the Hornet Cafe funds, just as the defendant did his settlement funds. Even though there were times when plaintiff spent money on mutual family expenses, (income taxes and general living expenses while defendant was out of work), that decision was plaintiff's. . . . Another factor that supports this decision is that the parties had another checking account at Superior Federal Bank that they used for every day business and that they deposited their paychecks into. It appears either party used

this account as they saw fit.

11. That it was undisputed that when plaintiff added defendant to the Hornet Cafe, he was to execute a Will naming her children as his beneficiaries. Defendant never executed a Will naming the plaintiff's children as beneficiaries to complete his part of the agreement and therefore the proceeds from the sale of said property is the sole and separate property of the plaintiff.

Appellant's first argument on appeal is that the trial court erred in finding that the proceeds in the Benton State Bank account and items purchased from the account were non-marital property. Appellant says the parties treated the funds in the Benton State Bank account as marital property until marital difficulties arose and the appellee removed the remaining funds, placed them in a lock box, and claimed them as her own. Therefore, according to the appellant, the trial court should have found that the account, the proceeds removed from the account, and the items purchased from the account and used by the parties were marital property.

Once property, whether real or personal, is placed in the names of persons who are husband and wife without specifying the manner in which they take, there is a presumption that they own the property as tenants by the entirety, and clear and convincing evidence is required to overcome that presumption. *McLain* v. *McLain*, 36 Ark. App. 197, 820 S.W.2d 295 (1991); *Lofton* v. *Lofton*, 23 Ark. App. 203, 745 S.W.2d 635 (1988). Clear and convincing evidence is evidence so clear, direct, weighty, and convincing as to enable the fact-finder to come to a clear conviction, without hesitance, of the matter asserted. *Reed* v. *Reed*, 24 Ark. App. 85, 749 S.W.2d 335 (1988). Tracing of money or property into different forms may be an important matter, but tracing is a tool, a means to an end, not an end in itself; the fact that one spouse made contributions to certain property does not necessarily require that those contributions be recognized in the property division upon divorce. *Canady* v. *Canady*, 290 Ark. 551, 721 S.W.2d 650 (1986).

On the evidence presented, we think the chancellor could have found that there was clear and convincing evidence to overcome the presumption that the Benton bank account was owned as tenants by the entirety. Because we review chancery cases de novo and reverse only if the chancellor's findings are clearly

erroneous or clearly against the preponderance of the evidence, we cannot say that the chancellor's finding to this effect should be reversed. *See Reed* v. *Reed, supra.*

Appellant also argues the chancellor erred in finding that the real property was the appellee's separate property.

The evidence shows that in 1991 the appellant, who was a truck driver, received a DWI charge. The appellee testified that the appellant had developed a drinking problem and she was concerned that he would be involved in an accident, that she would lose everything she had, that there would be nothing for the kids and not even a place for her. The appellee testified that she said:

> Jim, you're driving and you're drinking and you're going to have a wreck. We're going to lose everything—I'm going to lose everything we've—I've put into this house and there's going to be nothing left. Would you put the house in my name?

She said the appellant agreed. However, the appellant testified that he only "went along" with the appellee and that he did not realize he was signing his rights away to everything; that he did not understand what it meant; and that he just expected to get it out of his name in case he was sued.

Appellant argues on appeal that he transferred the property to the appellee only to protect their assets, not to release his interest in the property, and that the house is marital property.

Appellant cites *Crowder* v. *Crowder*, 303 Ark. 562, 798 S.W.2d 425 (1990), in support of this argument. *Crowder* also involved the division of real property in a divorce proceeding. In that case, Mr. Crowder executed a warranty deed on March 6, 1962, after he was involved in an automobile accident involving alcohol, transferring his interest in the property to his wife. Eight months later, he recorded the deed. The parties were divorced in 1989 and the chancellor found that, even though the husband signed the warranty deed, the property was marital property. Our supreme court affirmed the chancellor. The court held that a deed is inoperative unless there has been delivery to the grantee and a presumption of valid delivery attaches when the deed is recorded. This presumption is not conclusively established when there is proof of other factors pertaining to the deed which may rebut the presumption. The

court held the presumption of delivery was countered by Mrs. Crowder's testimony that they "figured" he would sign it over to save his place, and she could sign it back to him. The court also noted that the parties continued to live in the home until the divorce proceeding and paid taxes, insurance, maintenance, and subsequent construction costs on the property from a joint checking account containing contributions from both parties.

To the contrary, in the instant case the appellant signed the deed in September 1992 and it was filed for record in the same month. Although appellant continued to live in the house, the appellee paid all real estate and personal property taxes, insurance, and the mortgage on the home from the Richardson Place Trust money. Moreover, there is no evidence that the appellee ever said she would deed the home back to the appellant.

■ We cannot say the chancellor's finding that the real property is appellee's separate property is clearly erroneous.

On cross-appeal, the appellee asks that if we reverse the chancellor we grant her alimony. Because we hold that the chancellor did not err in finding that the proceeds in the Benton State Bank account, all property purchased by the appellee through this account, and the parties' home to be the appellee's separate property, we do not reach this issue.

Affirmed.

STROUD and NEAL, JJ., agree.