Verlon McKAY *v.* Debra McKAY

CA 98-888                                                    989 S.W.2d 560

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered May 12, 1999

*Meredith Wineland*, for appellant/cross-appellee.

*Virginia (Ginger) Atkinson*, for appellee/cross-appellant.

JOHN F. STROUD, JR., Judge. Appellant, Verlon McKay, and appellee, Debra McKay, were divorced by the Saline County Chancery Court on March 12, 1998. Appellant contends on appeal that the chancellor erred in finding that appellee has an equal interest in a houseboat purchased during the marriage. Appellee argues in her cross-appeal that the chancellor erred in finding that all of the money in the parties' joint checking account and that most of the property purchased with the funds from this account are the separate property of appellant. Appellee also argues that the chancellor erred in modifying the divorce decree by setting aside her award of rehabilitative alimony and in failing to award her attorney's fees.

When the parties married in 1991, appellee had custody of two sons from a previous marriage and was employed as a courier by Federal Express. Appellant receives veterans' and social security disability income. When the parties married, his monthly income was increased over $100 because he had a wife and minor stepchildren. Appellant receives approximately $76,000 of tax-free income each year. Appellant deposited all of his disability income into a joint checking account to which appellee made no contribution. Appellant paid for the utilities and groceries out of this account. At trial, appellant testified that he wrote 90% of the checks on this account; he said that appellee wrote approximately 10% of the checks and that she only did so after first discussing it with him. At the time of the parties' marriage, appellant owned a house in Little Rock and land in Saline County. After their marriage, the parties built a house on the land in Saline County. In order to finance the construction, appellant used over $60,000 of his nonmarital savings and borrowed $30,000; the parties mortgaged the house in Little Rock as security for the loan. During the marriage, this debt was repaid in full from funds in the joint checking account. When the parties separated, appellant closed out the joint checking account and kept the balance of $12,800.

During the parties' marriage, appellant inherited approximately $35,800 from his mother. He deposited the proceeds of his inheritance into the joint checking account and used this money in the purchase of a $39,500 houseboat. Although the seller prepared the bill of sale in both parties' names, appellant registered the boat with the State of Arkansas only in his name. He testified that he had not intended to give appellee an interest in the houseboat and that he had not objected to appellee's name appearing on the bill of sale because she was his wife.

Appellee testified that, at appellant's request, she changed jobs with Federal Express. For awhile, she worked part-time and later went back to full-time employment as a customer-service representative. At the time of trial, she was making $27,200 per year. Appellee stated that she assisted appellant with two multi-level marketing businesses during the marriage. Appellee testified that she did write checks on the joint account for such things as groceries and gas credit cards and that she did so without first dis-

cussing it with appellant. She also said that, during the marriage, she kept her own checking account, on which appellant did not write checks, and that she paid for a new refrigerator, stove, dishwasher, washer, and dryer. Appellant, however, testified that he paid for the washer and dryer. At trial, he produced the checks written for these items.

In the divorce decree, the chancellor found that all of the money that was in the joint checking account was the separate property of appellant because it was derived from his disability benefits and was under his control. The chancellor also found that, with the exception of the houseboat, everything purchased with the proceeds of the joint checking account was appellant's separate property because it was purchased with his disability income. The chancellor found that, although appellant's inheritance was used to purchase the houseboat, it was marital property because the bill of sale placed title in both parties' names and that appellant made a gift of an interest in the boat to appellee. The chancellor found that appellee had purchased the stove, refrigerator, and dishwasher and found them to be her separate property. He also directed appellant to pay appellee $100 a week in rehabilitative alimony through the end of 1998. Upon motion by appellant, however, the chancellor set aside the award of alimony; he found that, because appellee's pleadings did not request alimony, he was without authority to make this award.

On appeal, appellant argues that the chancellor erred in finding that appellee has an interest in the houseboat because he used the proceeds of his inheritance to purchase it and because he did not intend to make a gift of an interest in it to appellee.

■ ■   Under Arkansas law, property acquired by inheritance or in exchange for such property is not marital property subject to equal division upon divorce. Ark. Code Ann. § 9-12-315(b)(1) and (2) (Repl. 1998). However, a party can destroy the nonmarital status of such property by placing it in an account held jointly with a spouse. See Jackson v. Jackson, 298 Ark. 60, 765 S.W.2d 561 (1989). Once property, whether real or personal, is placed in the names of persons who are husband and wife without specifying the manner in which they take, there is a presumption

that they own the property as tenants by the entirety, and clear and convincing evidence is required to overcome that presumption. *Cole v. Cole*, 53 Ark. App. 140, 920 S.W.2d 32 (1996).

■ ■ A presumption also arises that the spouse placing the money in a joint account intended to make a gift of an interest in this money to the other spouse. *Creson v. Creson*, 53 Ark. App. 41, 917 S.W.2d 553 (1996). To support a finding that such property is separate property for purposes of property distribution upon divorce, the party seeking to rebut either presumption must present clear and convincing evidence that the property was separately owned. *Id.* In either event, the requirement of clear and convincing evidence means that the proponent seeking to rebut the presumption must do so by proof so clear, direct, weighty, and convincing that the fact-finder is able to come to a clear conviction, without hesitation, of the matter asserted. *Id.* Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction respecting the allegation sought to be established. *Id.; see also Cole v. Cole, supra.* This court's test on review is not whether it is convinced that there was clear and convincing evidence to support the trial judge's finding but whether it can say that the finding is clearly erroneous. *Bishop v. Bishop*, 60 Ark. App. 164, 961 S.W.2d 770 (1998). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Adkinson v. Kilgore*, 62 Ark. App. 247, 970 S.W.2d 327 (1998). A requirement that the evidence be clear and convincing does not mean that the evidence must be uncontradicted. *O'Flarity v. O'Flarity*, 42 Ark. App. 5, 852 S.W.2d 150 (1993). Even when the burden of proof is by clear and convincing evidence, this court defers to the superior position of the chancellor to evaluate the evidence. *Id.*

■ Appellant testified that, after he had talked with the seller of the houseboat, the seller had prepared the bill of sale in both parties' names. He said he did not object because "she was my wife." Applying the proper standard of review, therefore, we cannot say that the chancellor's finding that appellant gave appellee an interest in the houseboat is clearly erroneous.

For her cross-appeal, appellee argues first that the chancellor erred in failing to award her an interest in all of the property that was purchased with money from the joint checking account, even though appellant's disability income funded this account. Appellee does not dispute that appellant's disability income itself is excepted from the definition of marital property. *See* Ark. Code Ann. § 9-12-315(b)(6) (Repl. 1998). She also does not argue that his disability income lost its status as nonmarital property simply because it was used to acquire property. Instead, she contends that appellant's disability income lost its status as nonmarital property when he deposited it in the joint checking account and that she therefore has a one-half interest in everything purchased with the funds in that account. Appellee also argues that, contrary to the chancellor's finding, the joint checking account was not solely under appellant's control. She also stresses that appellant's monthly disability income was increased by approximately $100 a month because of his marriage to appellee and that he also drew a monthly allotment for her boys while they were under the age of eighteen. Appellant argues that, therefore, she did make an actual monetary contribution to the joint checking account.

Appellee also contends that, because she participated in giving a mortgage on appellant's house in Little Rock to secure the debt on the new house in Saline County, she should be awarded an interest in the new house. She states: "When nonmarital property is converted into security for a marital debt, as here, the protected status of that property which the owner might have had under the division of property statute is relinquished. *Hale v. Hale,* 307 Ark. 546, 822 S.W.2d 836 (1992)." In *Hale,* the supreme court held that it was permissible for nonmarital property to be subjected to payment of the parties' marital debts only because that property was specifically mortgaged to secure those debts. The supreme court limited the application of its holding therein to situations wherein the mortgaged nonmarital property is used to satisfy the debt to which it is actually pledged. The supreme court emphasized that the chancellor could not utilize this property to satisfy any other marital debts. In any event, in the case before us, the parties did not give a mortgage on the new house, but did so only on appellant's nonmarital house in Little Rock, on

which appellee has made no claim. The *Hale* case is therefore not applicable to this situation.

▪ Appellant testified that appellee only wrote checks on the joint checking account after first discussing it with him, that the parties understood the separate nature of their checking accounts, and that he had not intended to give appellee an interest in the funds in the joint checking account. The chancellor believed appellant's testimony and was satisfied that he had met his burden of rebutting the presumptions by clear and convincing evidence. We cannot say that his findings in this regard are clearly erroneous.

Appellee also argues that the chancellor erred in holding that he did not have authority to award alimony because appellee had failed to raise this issue in her pleadings. At the temporary hearing, appellee was awarded temporary monthly support in the amount of $100. At trial, she testified that her financial circumstances were basically the same as during the temporary hearing and stated that she needed continued assistance until her truck was paid for (approximately two years). She specifically requested that the chancellor award her alimony. In fact, counsel for appellant acknowledged at trial that appellee had requested alimony.

▪ Rule 15(b) of the Arkansas Rules of Civil Procedure allows for the amendment of the pleadings to conform to the evidence introduced at trial:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended in its discretion. The court may grant a continuance to enable the objecting party to meet such evidence.

The rule is liberal in its allowance of amendments to conform pleadings to proof and even contemplates an amendment after

judgment. *Hope v. Hope,* 333 Ark. 324, 969 S.W.2d 633 (1998). Even if no amendment is made, it does not affect the trial of issues not raised in the pleadings; permitting the introduction of proof on an issue not raised in the pleadings constitutes an implied consent to trial on that issue. *Id.; see also Interstate Oil & Supply Co. v. Troutman Oil Co.,* 334 Ark. 1, 972 S.W.2d 941 (1998).

■ Clearly, the issue of alimony was tried, and the chancellor did have authority to make this award. Accordingly, we hold that the chancellor erred in setting aside the award of alimony. On *de novo* review of a chancery record, when we can plainly see where the equities lie, we may enter the order that the chancellor should have entered, or we may decline to do so if justice will be better served by a remand. *Reaves v. Reaves,* 63 Ark. App. 187, 975 S.W.2d 878 (1998). In our view, justice will be better served by a remand so that the chancellor can compute the amount of alimony due appellee and enter a judgment in her behalf for that amount.

■ Appellee also argues in her cross-appeal that the chancellor erred in failing to award her attorney's fees. However, appellee failed to obtain a ruling on her request for attorney's fees, and it is well settled that an issue must be raised and ruled on before this court will consider it on appeal. *Vanderpool v. Fidelity & Casualty Ins. Co.,* 327 Ark. 407, 939 S.W.2d (1997); *Britton v. Floyd,* 293 Ark. 397, 738 S.W.2d 408 (1987). We therefore need not address this issue.

Affirmed on direct appeal; affirmed in part, and reversed and remanded in part on the cross-appeal.

ROBBINS, C.J., PITTMAN and CRABTREE, JJ., agree.

HART and ROGERS, JJ., dissent.

JOSEPHINE LINKER HART, Judge, dissenting. Appellant Verlon McKay and appellee Debra McKay were married on June 8, 1991, and divorced on March 12, 1998. During their marriage, appellant placed appellee's name on his checking account, making it a "joint account." Appellant and appellee also maintained separate bank accounts. The funds deposited into the joint account were monthly checks paid to appellant from the Vet-

erans Administration and Social Security Administration. Appellant did not work and these funds were his contributions toward the support of the family. Appellant conceded that additional benefits, based on his marriage to appellee, were paid to him. These additional monthly benefits were placed in the joint account.

During the marriage, the parties used funds from the joint account to pay for groceries, utilities, furniture, boats, and motor vehicles; to create investment accounts; and to repay a $30,000 loan obtained by the parties to partially finance the construction of the home built by the parties during the marriage. Appellant verified that the joint account was the only account from which both parties could write checks, and both parties wrote checks on the account. The appellee wrote approximately 10% of the checks written on the joint account. The appellant removed the balance of $12,800 from the joint account when the parties separated. The chancellor awarded the joint account to appellant.

The parties constructed a home on land acquired by the appellant prior to his marriage to the appellee. Appellant admitted they planned and built the house together and had intended to live there the rest of their lives. A portion of the construction cost of the home, approximately $62,000, was paid from appellant's separate savings account. The parties financed the remainder of the construction costs by obtaining a $30,000 loan that was secured by a mortgage on a rent house owned by the appellant. Both parties signed the loan agreement, and both were responsible for repaying the debt. The loaned funds were placed in the joint account and then used to pay construction costs. The loan was repaid in full during the marriage with funds from the joint account. The chancellor awarded the appellant the home as his sole property.

Also, the appellant invested in CIFRA stock with funds from the joint account and admitted that the total worth of the investment account was approximately $18,000. Appellant did not establish the value of the account before marriage nor did he establish the amount of money invested in the stock during the marriage. This account was also awarded to the appellant.

In making these decisions, the court failed to recognize that the account was a joint account by virtue of the appellee's name being on the account. The appellant placed funds he received *during the marriage* in the account after he had made the account a joint account. The court also disregarded the fact that appellant received extra benefits based solely on his marriage to the appellee and those funds were commingled in the joint account. After making these rulings, the chancellor, in an inconsistent ruling, divided equally between the parties a houseboat that was purchased during the marriage, even though the houseboat was purchased with money that appellant received through inheritance. In making this award, the chancellor disregarded appellant's contention that he did not intend to give the appellee a one-half interest in the houseboat, even though appellant established that the title to the boat was in his sole name. The chancellor found that the bill of sale was made in their joint names and, therefore, appellee was entitled to a joint interest in the houseboat.

The law presumes that when property is placed in the names of both husband and wife, the property is held by them as tenants by the entirety. *Creson v. Creson*, 53 Ark. App. 41, 917 S.W.2d 553 (1996). The law also presumes that a spouse who deposits money in a joint account intends to impart to his spouse a gift of an interest in this money. *Id.* A party seeking to claim such property as separate property must rebut this presumption by clear and convincing evidence. *Id.* Clear and convincing evidence to rebut the presumption must be so clear, direct, weighty, and convincing that the fact finder is able to come to a clear conviction, without hesitation, of the matter asserted. *Id.*

In *Lofton v. Lofton*, 23 Ark. App. 203, 745 S.W.2d 635 (1988), this court held that once property is placed in the names of husband and wife, without specifying the manner in which they take, there is a strong presumption they own the property as tenants by the entirety, and it takes clear and convincing evidence to overcome that presumption. In *Lofton*, both marital funds and separate funds were used to purchase certificates of deposit in the names of both husband and wife. The husband's refusal to concede that the certificates were to be marital property was held insufficient to overcome the presumption. *Id.*

In *McLain v. McLain*, 36 Ark. App. 197, 820 S.W.2d 295 (1991), the wife sold property from nonmarital sources for $158,000. She placed this money in a joint account with her husband, where it remained for approximately nine months to a year. They withdrew $125,000 from their joint account to purchase securities. This court held that the wife failed to meet the quantum of proof necessary to rebut the presumption of a gift, as the only evidence she presented was that she always thought of the securities as her property. The court found the length of time the money remained in the joint account to be significant.

In *Mathis v. Mathis*, 52 Ark. App. 155, 916 S.W.2d 131 (1996), the parties had been married for eight years when Mr. Mathis retired from his job of twenty-eight years. In order to obtain his retirement benefits in a lump sum, Mrs. Mathis was required to sign a release. She agreed to sign the release only after Mr. Mathis agreed to place the money in their joint account. He did so for less than sixty days, but then withdrew the funds and placed them in IRAs under his sole name. He testified he never intended Mrs. Mathis to have one-half of his total benefits, but only one-half of the benefits that accrued during their eight-year marriage. This court found it significant that both parties had access to the funds during the several weeks time period. Chief Judge Robbins, writing for this court, affirmed the chancellor's decision finding the retirement funds to be a tenancy by the entirety even though the funds had been transferred to the sole name of Mr. Mathis after they had remained in the joint account for that short time.

In *Creson, supra,* the husband inherited approximately $27,000 and placed it in a joint account with his wife. The wife made neither deposits nor withdrawals from the joint account. Subsequently, he used $22,000 from the joint account to obtain refinancing on their marital residence. Even though his wife agreed this money would be repaid to him when the residence was sold, this court upheld the chancellor's finding that the inherited money became joint property when Mr. Creson deliberately placed it in the joint account. In *Creson*, as in the present case, money from the joint account was used to purchase other items, such as stereo equipment. This court also held in *Creson* that the

funds placed in the joint account and the purchases made from the joint account were marital property.

This court has consistently upheld the strong presumption that property placed in the names of both spouses is jointly owned. There have been only two cases where the court has held that the presumption was overcome. In *Jackson v. Jackson*, 298 Ark. 60, 765 S.W.2d 561 (1989), the court held the presumption was rebutted where the wife deposited funds from her separate stock account into a joint account with her husband and then immediately wrote a check to her sister for the amount deposited to purchase the sister's interest in real estate. The court noted that the wife had rejected the husband's suggestion that they buy the property together and that the wife had immediately withdrawn the money from the joint account to purchase the real estate in her name alone. The court found it significant that the funds used to purchase the real estate interest were directly traceable to the wife's nonmarital stock. Also in *Cole v. Cole*, 53 Ark. App. 140, 920 S.W.2d 32 (1996), this court held that funds held in a joint account were the sole property of the wife. The evidence showed only money acquired from the wife's separate property was deposited in the account. Further, the husband had written only four or five checks on that account and he did so only after receiving his wife's permission. The parties had another joint account where they deposited their wages and used those funds to pay their bills.

If the placing of both names on the bill of sale to the houseboat purchased by inheritance money created a joint interest in the boat, as found by the chancellor, surely placing both names on a joint bank account created a joint interest in the account. Several facts weigh in favor of this conclusion, such as, the joint account was maintained for several years and both parties exercised the right to withdraw funds from the account. The joint account was used to repay the $30,000 construction loan used to complete construction of the house where the parties resided, and was used to pay utilities, groceries, furniture, appliances, and various items for the house. This was the only joint account held by the parties.

The evidence presented by the appellant to refute the presumption of a gift was that the appellee had her own checking account and she wanted to be an independent woman. Appellant testified that appellee told him when she wrote checks on the joint account because "it was understood that that account was mine and hers was hers." This explanation does not address appellant's reason for setting up the joint account, nor does it address his maintaining a separate account in his sole name. This was the only account the parties had where both parties could write checks. He gave no other explanation of why he continued to deposit funds in the joint account, but admitted she had access to the account and had written 10% of the checks on the account. This was the sole testimony relied upon by the court to be so clear, direct and convincing as to overcome the presumption that a gift was created.

In determining whether the presumption of a gift was rebutted, the majority ignored standards set out in the above-cited cases. The joint account and property purchased by funds from the joint account are marital property and should be divided equally.

I therefore dissent from the prevailing opinion.

JUDITH ROGERS, Judge, dissenting. I write in dissent to the majority's holding that appellant owns all of the funds in the parties' joint checking account.

It would appear that the judges deciding this case agree on the rule of law applicable to this issue: Once property is placed in the names of persons who are husband and wife without specifying the manner in which they take, there is a presumption that they own the property as tenants by the entirety, and clear and convincing evidence is required to overcome that presumption. *See Cole v. Cole*, 53 Ark. 140, 920 S.W.2d 32 (1996); *Mathis v. Mathis*, 52 Ark. App. 155, 916 S.W.2d 131 (1996). However, for all intents and purposes, the majority opinion has modified that law. The majority opinion holds that the chancellor's finding that appellant rebutted this presumption by clear and convincing evidence is not clearly erroneous and relies on the following facts to

which appellant testified: (1) that appellee wrote checks on this account only after first discussing it with him; (2) that the parties understood the separate nature of their checking accounts; and (3) that appellant had not intended to give appellee an interest in the funds in the joint account.

These justifications simply do not hold up under scrutiny. At trial, appellee testified that the joint account was not solely under appellant's control. In fact, appellant admitted that appellee had written ten percent of the checks on this account. Can there be any reasonable doubt that the number of checks that appellee wrote on this account over the duration of their seven-year marriage was substantial? As for the parties' "understanding" about the separate nature of their checking accounts, one cannot ignore the fact that household expenses, benefitting both parties, were paid out of the joint checking account.

Thus, we are left with appellant's statement that, when he deposited his funds into the joint checking account, he *intended* that the money would remain his separate property. Surely it is not the law that, when depositing money into a joint checking account, someone's *intent* controls whether it is separately or jointly held. If intent is the controlling factor, divorce litigants will, regardless of their actions, always be able to avoid the effect of this presumption by later testifying that they *intended* to keep this money separate. I submit that more is required to overcome the presumption that such accounts are held as tenants by the entirety.

This case illustrates a disturbing trend to devalue the efforts of one spouse in a marriage and to emphasize the financial contribution of the other spouse by disregarding the efforts of the spouse who often provides care and supervision within the family unit.