Verlon McKAY *v.* Debra McKAY

99-617                                                8 S.W.3d 525

Supreme Court of Arkansas
Opinion delivered January 20, 2000

*Meredith Wineland,* for appellant.

*Virginia (Ginger) Atkinson,* for appellee.

LAVENSKI R. SMITH, Justice. This is a domestic-relations case involving property division and alimony incident to a divorce and comes before this court on a Petition for Review from the Arkansas Court of Appeals. Appellant Verlon McKay ("Verlon") originally appealed the Saline County Chancery Court's decision in the divorce action, and Appellee Debra McKay ("Debra") cross-appealed. The Arkansas Court of Appeals issued a decision in this matter on May 12, 1999, in *McKay v. McKay,* 66 Ark. App. 268, 989 S.W.2d 560 (1999), affirming the chancellor in part and revers-

ing in part. Debra petitioned this court for review. We accepted the case for review pursuant to Supreme Court Rule 1-2(e).

*Facts*

Verlon and Debra were married on June 8, 1991, and divorced on March 12, 1998, by order of the Saline County Chancery Court. There were no children born of the marriage, but Debra had custody of two sons by a prior marriage. At trial, the parties gave conflicting testimony regarding their property. In particular, they disputed the appropriate disposition of a checking account to which both were signatories and a houseboat purchased in 1997. Following a hearing, the chancellor made the following specific findings. He found that the joint account, which had been solely Verlon's before marriage, remained separate property because all the funds deposited in the account derived from federal disability checks Verlon received from the Veterans Administration and the Social Security Administration.[1] Additionally, the court found that although the account was held in joint names, Verlon controlled the funds. Accordingly, the court also assigned to Verlon all property purchased through that account. With respect to the houseboat, the court found that it constituted marital property based upon a bill of sale issued in the name of both parties. The court did so even though Verlon purchased the boat with money he received by inheritance. The court found that the bill of sale was evidence of a gift by Verlon to his wife. The court also ordered that the stove, refrigerator, and dishwasher belonged to Debra, and that Verlon could either return those items to Debra or pay her $2,000 within the week. In addition, the court found that the parties would keep their own vehicles and would be responsible for their own payments. Finally, the court ordered that Verlon should continue paying alimony in the amount of $100 per week for the remainder of 1998, approximately nine months, and that the parties should each pay their attorney's fees.

Subsequent to the hearing and the final order filed on March 13, 1998, Verlon entered a Motion for Reconsideration claiming that the chancellor erred in awarding the temporary alimony

---

[1] Verlon received VA and Social Security Disability benefits due to an injury he received while serving in the military in 1961. This injury relegated him to a wheelchair.

because Debra never requested alimony in her complaint. As such, Verlon argued, the court had no jurisdiction to enter the alimony award. Debra answered, and also moved to show cause because Verlon had not only failed to pay alimony, but he had also failed to pay the $2,000 or return the appliances ordered by the court in the divorce decree. Upon consideration of the motion, the court set aside its order for alimony, agreeing with Verlon that Debra did not request the award in her pleadings, and that the court could not grant such an award on its own action.

Verlon then filed his Notice of Appeal on April 13, 1998, and Debra cross-appealed in a timely fashion. Specifically, Verlon argued on appeal that the trial court erred in ordering that the houseboat constituted marital property because he had adduced clear and convincing evidence that he did not intend to make a gift of the property. In her appeal, Debra argued that the trial court erred in ruling that none of the personal or real property acquired during the marriage through the joint checking account was marital property. Furthermore, Debra argued that the trial court erred in setting aside its original motion on the award of rehabilitative alimony, and that the court erred in failing to award payment of her attorney's fees.

In a decision dated May 12, 1999, the court of appeals affirmed the chancellor's determinations regarding the houseboat and the joint checking account. However, the court of appeals reversed the chancellor's order granting the Motion for Reconsideration regarding Verlon's alimony payments. The court based its holding on Rule 15 of the Arkansas Rules of Civil Procedure which allows for the amendment of pleadings to conform to the proof introduced at trial. Applying this rule, the appellate court held that the evidence presented at trial was sufficient to allow for an award of rehabilitative alimony, and the chancellor erred in finding that he did not have jurisdiction to make such an award. The court of appeals remanded that particular matter to the chancellor to compute the proper amount of alimony due Debra. Finally, the court of appeals found that Debra failed to obtain a ruling on her request for attorney's fees; as such, the issue was waived. We granted Debra's Petition for Review.

## Standard of Review

When we grant a petition to review a case decided by the court of appeals, we review it as if it was originally filed in this court. *Youngman v. State Farm Mut. Auto. Ins. Co.*, 334 Ark. 73, 971 S.W.2d 248 (1998); *Malone v. Texarkana Pub. Schs.*, 333 Ark. 343, 969 S.W.2d 644 (1998) (citing *Williams v. State*, 328 Ark. 487, 944 S.W.2d (1997)). We hear chancery cases, including division of property cases, *de novo* on the record, but will not reverse a finding of fact by the chancellor unless it is clearly erroneous. *Webber v. Webber*, 331 Ark. 395, 962 S.W.2d 345 (1998); *Box v. Box*, 312 Ark. 550, 851 S.W.2d 437 (1993). The evidence on appeal, including all reasonable inferences therefrom, and the findings of fact by a judge must be reviewed in a light most favorable to the appellee. *Looper v. Madison Guar. Sav. & Loan Ass'n*, 292 Ark. 225, 729 S.W.2d 156 (1987). We will defer to the superior position of the chancellor to judge the credibility of witnesses. *Noland v. Noland*, 330 Ark. 660, 956 S.W.2d 173 (1997); *Holaday v. Fraker*, 323 Ark. 522, 920 S.W.2d 4 (1996). A grant of alimony or attorney's fees are issues within the sound discretion of the chancellor and will not be disturbed on appeal absent an abuse of discretion. *Burns v. Burns*, 312 Ark. 61, 847 S.W.2d 23 (1993).

Debra addresses three main points in her Petition for Review, all of which were raised below. First, Debra argues that the chancellor erred by finding that the bank-account property remained separate property. Second, Debra argues that the chancellor erred in reversing his decision to grant her rehabilitative alimony. Finally, Debra argues that the chancellor erred in failing to award her attorney's fees and costs due to the disparity between the parties' incomes and ability to pay.

Verlon argues that the chancellor erred in finding that the houseboat was marital property because there was no evidence which showed that the funds used to pay for the houseboat were ever processed through the joint account. Furthermore, Verlon argues that he changed the title to the boat from one which listed both his and Debra's names to one which only had his name once he registered the boat. Regarding alimony, Verlon argues that alimony should not have been awarded by the court of appeals after the chancellor vacated his order because Debra did not comply with the Rules of Civil Procedure in pleading her entitlement to ali-

mony. As such, the chancellor's decision to vacate his original award of alimony was proper.

## I. Property Division

■ Any discussion of division of marital property should begin with the relevant statutory provision. Arkansas Code Annotated § 9-12-315 (Repl. 1998) defines "marital property" as "all property acquired by either spouse subsequent to the marriage," subject to certain exceptions. There is a presumption that all property acquired during a marriage is marital property. *McDermott v. McDermott*, 336 Ark. 557, 986 S.W.2d 843 (1999); *Layman v. Layman*, 292 Ark. 539, 731 S.W.2d 771 (1987); *Boggs v. Boggs*, 26 Ark. App. 188, 761 S.W.2d 956 (1988). The applicable exceptions listed in the statute include:

> (1) Property acquired prior to marriage, or by gift, or by bequest, or by devise, or by descent;
>
> (2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent.

Ark. Code Ann. § 9-12-315(b).

■ The general rule in Arkansas is that once property is placed in both spouses' names, there is a presumption that the property is held in tenancy by the entirety. *McEntire v. McEntire*, 267 Ark. 169, 590 S.W.2d 241 (1979). *Ramsey v. Ramsey*, 259 Ark. 16, 531 S.W.3d 28 (1975); *Lofton v. Lofton*, 23 Ark. App. 203, 745 S.W.2d 635 (1988); *Creson v. Creson*, 53 Ark. App. 41, 917 S.W.2d 553 (1996). As this court stated in *Ramsey*, "[t]his presumption is strong, and it can be overcome only by clear and convincing evidence, partially because the alternative is a resulting trust the establishment of which, under such circumstances, requires that degree of proof...." *Ramsey*, 259 Ark. at 19-20. In determining whether property remains under the control of one spouse upon divorce, or is the property of both spouses, "tracing" may be used by the court. "Tracing of money or property into different forms may be an important matter, but tracing is a tool, a means to an end, not an end in itself; the fact that one spouse made contributions to certain property does not necessarily require that those contributions be

recognized in the property division upon divorce." *Canady v. Canady*, 290 Ark. 551, 721 S.W.2d 650 (1986); *Cole v. Cole*, 53 Ark. App. 140, 920 S.W.2d 32 (1996).

## A. The Joint Bank Account

The chancellor ruled that the bank account was not marital property because "all of the money was derived from either his Veterans Administration compensation disability benefits or from his Social Security disability benefits. The money was placed into an account that was held in joint names, and was under the control of the Defendant." In other words, the chancellor determined that Verlon succeeded in rebutting the presumption that the account was marital property held as tenants by the entirety. Debra argues that the court erred in so doing. We disagree and hold that the chancellor's decision was not clearly erroneous.

The chancellor, in part, held that *Cole* should control under the instant facts. In *Cole*, the court of appeals upheld the chancellor's finding that a joint account in both parties' names was actually the wife's account because the account was funded by inheritance money received by the wife. Additionally, the chancellor in *Cole* determined that the wife had complete control over the account, that the husband only wrote four or five checks total from the account and only with his wife's prior approval, and that the parties also had a separate joint account into which they deposited their paychecks and over which they both had control. The court of appeals, in affirming the chancellor's decision, found that there was clear and convincing evidence to support the chancellor's decision, and that that decision was not clearly erroneous.

Due to the nature of this case, a close examination of the facts is in order. Before and after their marriage, Verlon derived his income exclusively from disability benefits directly deposited into a checking account. Prior to the marriage that account was in his name only. After the marriage, Verlon added Debra's name to the account, thus making it a joint account. However, the account continued to be funded solely by Verlon's disability income. Debra maintained a separate checking account in her name only which she had prior to the marriage. It is undisputed that all of the funds deposited in Debra's account came from her employment as a driver

for Federal Express. During the marriage, the couple maintained two checking accounts. Debra deposited her paycheck from her job with Federal Express in an account for which she was the sole signatory. Verlon also maintained a savings account held in his name only.

At trial, the parties gave conflicting testimony regarding the joint account's use and control. Debra stated her belief that the account was marital property. She testified that she wrote checks on the joint checking account for groceries and to pay Verlon's portion of their gasoline credit card bills. She indicated that they had an agreement that Verlon would pay for the groceries out of the joint account. She testified that Verlon also paid for the utilities out of the joint account. She testified that if her children had a party, she would pay for that out of her own personal account. She testified that in the last year of the marriage, if she stopped by the store to pick something up and she paid for it out of her own account, "I had him reimbursing me. Before that, I would just pick it up and pay for it." Debra testified that it was their agreement that Verlon would pay for the groceries out of the joint account. Debra also testified that the house furniture was all paid for out of the joint account and that a bedroom suite for one of her children was bought out of the joint account. Debra acknowledged that she never put any of her paychecks into the joint account, nor did she ever deposit any other money into the joint account. She also acknowledged that the Cifra stock that Verlon bought with funds from joint checking account was in his name only.

Verlon gave a different version of the parties' ownership and use of the joint checking account. Verlon testified that Debra told him every time that she had written a check on the joint account because "it was understood that that account was mine and hers was hers." Verlon also testified that he made all of the mortgage payments from the joint account. He stated that he looked through all of his statements on the joint account, and Debra never made any deposits on the account. Verlon testified that Debra probably wrote approximately ten percent of the checks out of the account, but that she never wrote a check out of the account unless she first spoke to him about it. Verlon testified that he paid Debra back for the washer and dryer out of the joint account and produced the checks written to her to support his contention. When Debra filed for divorce,

Verlon withdrew the funds totaling approximately $12,800 in the joint account.

■ ■ On appeal, we defer to the trial court's credibility assessments. *Noland, supra.* The trial court heard all of the testimony and assessed the credibility of the witnesses. The trial court's findings indicate that the court chose to accept the testimony of Verlon that he alone controlled the expenditure of funds from the joint account funded by his disability income and that Debra had agreed to this arrangement. The trial court thus apparently found that when Debra expended funds from the account it was with Verlon's permission or at his direction. Accordingly, the trial court ruled that Verlon provided clear and convincing evidence that the account funds remained his separate property despite the account existing in both names. We cannot say that the trial court's decision was clearly erroneous and, therefore, affirm.

### B. The Houseboat

In his order, the chancellor determined that the houseboat was marital property subject to a one-half division in the divorce. On appeal, Verlon argues that there was no evidence introduced at the divorce hearing which indicated that the money used for the houseboat came from the joint account, or that the inheritance he received from his mother, totaling $35,809.11, was ever commingled with the joint account to which Debra could attach any interest. Verlon argues that the funds are traceable to the inheritance money, and that he used cashier's checks, instead of checks from the account, to pay for the houseboat.

While it would appear that the ownership of the houseboat would fall under the second exception to marital property listed in Ark. Code Ann. § 9-12-315(b), Verlon misses the point in that the chancellor found that "the houseboat is marital property because it is in joint names although derived from benefits from inheritance. *The Court finds a gift was made.*" (Emphasis added.) The chancellor specifically found at the close of the hearing that the bill of sale, which was the only written evidence of the ownership of the houseboat, indicated that it was jointly owned by the parties, despite Verlon's testimony that he later transferred title into his name only. Verlon did not produce any documentation of a change

in the title of the boat. In other words, the chancellor found that while the property could be traced to an inheritance, Verlon made a gift to Debra of an interest in the property. The chancellor thereby found that Verlon did not rebut the presumption that once the property was placed in both his and Debra's names, the property was then held as tenants by the entirety. *See Ramsey, supra,* and *Lofton, supra.*

■ We discussed the situation of the purchase of property by one spouse with inheritance funds which have been processed through a joint account in *Jackson v. Jackson,* 298 Ark. 60, 765 S.W.2d 561 (1989). In *Jackson,* the wife used inherited funds to purchase her sister's one-half interest in real property to which the wife owned the other one-half interest in her name alone. When the wife received the inheritance, she deposited the money in a joint bank account which she held with her husband, and then several days later wrote a check out of that account to her sister for the property. The real property was titled in the wife's name only. Upon finding that the real property was not marital property, the court found that the wife merely "poured" the inheritance in and out of the joint account and then, significantly, only titled the property in her name upon purchase. We upheld the chancellor's finding that the husband never exercised any dominion or control over the funds in the joint account, and that the wife never intended to make a gift of an interest in the property to her husband. Applying the appropriate principles to the instant case, we cannot say that the trial court clearly erred in finding that the houseboat was marital property. While the chancellor's determinations on the houseboat and the joint checking account may appear inconsistent, they, in fact, underscore the fine factual distinctions that often characterize marital-property divisions.

## II. Alimony

Verlon cross-appeals the court of appeals holding which reversed the chancellor's order denying an award of alimony. Verlon contends that Debra should not be provided alimony because she did not properly plead her claim for alimony under the Arkansas Rules of Civil Procedure. In response, Debra argues that she is allowed the rehabilitative alimony under Arkansas law, and that the chancellor erred in deciding that he did not have jurisdiction to

award alimony. We agree and reverse the chancellor's ruling that he lacked jurisdiction to award alimony.

An award of alimony is not mandatory but is a question which addresses itself to the sound discretion of the chancellor. *Wilson v. Wilson*, 294 Ark. 194, 199, 741 S.W.2d 640 (1987). Fault is not a factor in the award of alimony unless it meaningfully relates to need or ability to pay. *Murphy v. Murphy*, 302 Ark. 157, 159, 787 S.W.2d 684 (1990) (citing *Russell v. Russell*, 275 Ark. 193, 628 S.W.2d 315 (1982)). Below, the trial court's original decree of divorce ordered Verlon to pay Debra rehabilitative alimony through the end of 1998. Upon Verlon's motion, the court set aside the award of alimony finding that Debra's pleadings did not request an award of alimony and "it was therefore without authority to make such award." However, Rule 15(b)of the Arkansas Rules of Civil Procedure states, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Furthermore, this rule allows these amendments to relate back to the date of the original pleading when the claim or defense arose out of the conduct, transaction, or occurrence set forth in the original pleading. Rule 15(b) does not require that the claim be pled in writing at the time the parties actually try the issues.

It is apparent on the record that throughout the proceeding below the parties litigated the case with full knowledge of Debra's desire for alimony. In fact, the trial court originally awarded temporary alimony in the amount of $100 per week at a temporary hearing held on November 21, 1997, with no objection from Verlon. The record reflects that the trial court had before it adequate facts upon which to make a determination of Debra's entitlement to alimony. Rule 15(b) further provides that if the evidence is objected to at trial on the ground that it is not within the issues made by the pleadings, the trial court may nonetheless permit amendment of the pleadings in its discretion. We hold, therefore, that the trial court erred in granting Verlon's motion to set aside the award of alimony.

*III. Attorney's Fees*

Finally, Debra argues that she should have been awarded attorney's fees and costs due to the disparity in the parties' incomes and ability to pay these amounts. With regard to attorney's fees, Ark. Code Ann. § 9-12-309 (Repl. 1998) controls. Under this statute, the chancellor may award attorney's fees to either party, and will consider an award of additional fees should one party have to return for the enforcement of alimony, maintenance, and support provided for in the decree. A chancellor has considerable discretion to award attorney's fees in a divorce case. *Gavin v. Gavin*, 319 Ark. 270, 890 S.W.2d 592 (1995). In determining whether to award attorney's fees, the chancellor must consider the relative financial abilities of the parties. *Anderson v. Anderson*, 60 Ark. App. 221, 963 S.W.2d 604 (1998); *Paulson v. Paulson*, 8 Ark. App. 306, 652 S.W.2d 46 (1983); *see also, Lee v. Lee*, 12 Ark. App. 226, 674 S.W.2d 505 (1984). We hold the chancellor did not abuse his discretion by declining to award Debra attorney's fees and costs.

Affirmed in part and reversed in part.