Victor L. BETTIS  *v.*  Wendy P. BETTIS

CA 06-1417                                                    267 S.W.3d 646

Court of Appeals of Arkansas
Opinion delivered November 7, 2007

[Rehearing denied December 12, 2007.*]

---

* GRIFFEN, J., would grant rehearing.

*Worsham Law Firm, P.A.*, by: *Richard E. Worsham*, for appellant.

*Dover Dixon Horne, PLLC*, by: *W. Michael Reif* and *Nona M. Robinson*, for appellee.

LARRY D. VAUGHT, Judge. Appellant Victor Bettis appeals the trial court's order modifying the divorce decree that extended and increased alimony payments to his former wife, appellee Wendy Bettis. We affirm.

Victor and Wendy were divorced in 2002. They have three children — Megan, Jacqueline, and Evan. Jacqueline and Evan were minors at the time of the divorce, age sixteen and fourteen

respectively. Jacqueline suffers from cerebral palsy and is confined to a wheelchair. Although Jacqueline requires twenty-four hour a day care, she is currently enrolled at the University of Central Arkansas and maintains a 3.0 grade-point average.

The divorce decree awarded custody of Jacqueline and Evan to Wendy; awarded Wendy child support for Jacqueline and Evan; acknowledged that child support for Jacqueline would continue beyond the age of majority because of her disability; and awarded $1000 per month in alimony to Wendy until Evan graduated from high school.

In November 2004, the trial court entered an order that, among other things, stated that child support would continue for Jacqueline due to her disability; however, the parties agreed that child support for Jacqueline was abated as of May 1, 2004, so that she could receive government assistance.[1] According to the testimony at trial, Jacqueline is not entitled to government benefits if Wendy receives child-support payments for Jacqueline.

On March 20, 2006, Victor filed a motion for termination of alimony and child support. He alleged that child support payments for Evan should be terminated, because Evan turned eighteen and was about to graduate from high school. Wendy conceded this issue, and the trial court terminated these payments. Victor also alleged that alimony should be terminated because the divorce decree stated that alimony will be terminated upon Evan's graduation from high school. Wendy filed a response and countermotion seeking the continuation and increase of alimony.

At trial, Wendy testified that she is employed as a teacher at the Cathedral School where she has worked for twelve years. Her salary for the 2006-07 school year was $33,000. Since the divorce, her salary has increased $5100. She lives in the home that she and Victor built to accommodate Jacqueline's special needs. The testimony was undisputed that Wendy is the primary-care giver for Jacqueline year round and that Jacqueline needs assistance with every task. Also, while Jacqueline is in college during the school year, she lives with Wendy during the weekends, holidays, and summers.

Victor testified that he is employed with Remington Arms where he earns $82,500 a year. He testified that since the divorce,

---

[1] Jacqueline receives college tuition scholarships from the Arkansas Academic Challenge and Arkansas Rehabilitation, social security disability benefits, Medicare benefits, and Independent Choices benefits.

his salary has increased in excess of $10,000. He admitted that Wendy is the primary care giver for Jacqueline, but he testified that he provides help when needed.

Lyles Henry testified on behalf of Wendy as an expert witness. He reviewed Victor's tax returns and his Affidavit of Financial Means. Mr. Henry testified that Victor had a net annual income of $60,022 and expenses of $36,732. Therefore, Mr. Henry concluded that Victor had the ability to pay $1000-$2000 per month in alimony.

The trial court subsequently entered an order finding that there had been a substantial change in circumstances since the entry of the divorce decree justifying an increase in the duration and amount of alimony awarded to Wendy. The trial court stated:

> The substantial change in circumstances include the following:
>
> a. The Defendant's annual income increased by at least $10,000 since the entry of the Divorce Decree and the Plaintiff's annual income increased by at least $5000 since the entry of the Divorce Decree.
>
> b. The Defendant received a $30,000 bonus from his employer.
>
> c. The child support for Jacqueline has been abated. The Plaintiff anticipated at the time of the divorce that she would be receiving child support payments to assist in Jacqueline's care and to provide her a home. Plaintiff is not receiving child support payments to assist her in the care of Jacqueline, who is an adult and who is in need of care because of her disability.
>
> d. Jacqueline is attending college.
>
> e. The Defendant is not paying any child support for Jacqueline and therefore has a higher level of income than he anticipated at the time of the divorce.
>
> f. Plaintiff provides a substantial amount of care for Jacqueline.
>
> g. Either of the parties could have chosen to provide the care for their adult daughter, who is in need of substantial care, however, the party who provided the care for Jacqueline was Plaintiff.

The trial court further stated that it considered the tax effect of Victor's continued alimony payments. The court found that Wendy's weekly income was approximately $512 while Victor's weekly in-

come was approximately $1,184.55. The trial court then awarded alimony to Wendy in the amount of $1150 per month and awarded her $3000 in attorney's fees and expenses. Victor has appealed from this order.

Victor first argues that the trial court erred in finding that there had been a change in circumstances sufficient to continue and increase alimony to Wendy. He argues that Wendy is actually seeking child support but calling it alimony. A decision whether to award alimony is a matter that lies within the trial court's sound discretion, and on appeal we will not reverse a trial court's decision to award alimony absent an abuse of that discretion. *McKay v. McKay*, 340 Ark. 171, 8 S.W.3d 525 (2000); *Cole v. Cole*, 82 Ark. App. 47, 110 S.W.3d 310 (2003). Alimony is intended to rectify any economic imbalance in the earning power and standard of living of the parties in light of the particular facts of the case. *Cole*, 82 Ark. App. at 58, 110 S.W.3d at 317. The primary factors to be considered are the financial need of one spouse and the ability of the other spouse to pay. *Id.*

Modification of an award of alimony must be based on a change of circumstances of the parties. *Herman v. Herman*, 335 Ark. 36, 977 S.W.2d 209 (1998). The burden of showing a change of circumstances is always on the party seeking the change in the amount of alimony. *Hass v. Hass*, 80 Ark. App. 408, 97 S.W.3d 424 (2003). In the divorce decree, the parties agreed that alimony would discontinue when Evan graduated from high school. Therefore, the burden of showing a change of circumstances to support a continuation and increase of alimony was on Wendy.

We hold that the trial court did not abuse its discretion in modifying the divorce decree by continuing and increasing alimony. First, the evidence supports the trial court's findings of Victor's ability to pay and Wendy's need. Wendy's annual income is $33,000 while Victor's is $82,500. Wendy's expert witness testified that Victor had the ability to pay up to $2000 per month in alimony. At trial, Victor admitted that "I've got more than enough [money] to cover my expenses and continue to pay the alimony." In contrast, Wendy testified that, "I cannot make my house payment without the current alimony." Wendy's ability to pay the mortgage is significant in light of the undisputed fact that she is the primary care giver for Jacqueline who, along with Wendy, must have a place to live. Even Victor testified about the importance of Wendy having a home: "I would agree that Jacque-

line needs a place to stay on the weekends. [I] [n]ever denied that [Jacqueline] needs a place to stay on holidays and in the summer. My ex-wife has been the only one to provide that."

Furthermore, we hold that the trial court did not abuse its discretion in finding a change of circumstances. Since the entry of the divorce decree, Victor's income increased by $10,000 while Wendy's increased only by $5000. At the time of the divorce, Victor anticipated paying child support indefinitely, and because it was abated, he has experienced an unexpected increase in income. When the parties divorced, Wendy testified that she never anticipated that Jacqueline would be able to attend college. Moreover, Wendy did not anticipate that Jacqueline's child support would be abated so that Jacqueline could receive government benefits. These facts alone demonstrate a significant change in circumstances since the entry of the divorce decree.

We disagree with Victor, and the dissent, that this case is nothing more than Wendy's effort to collect child support by calling it alimony. We further acknowledge the unusual circumstances of this case: Jacqueline will likely need care and support for the rest of her life, but she cannot be the beneficiary of child-support payments because of her receipt of government benefits. Nevertheless, based on the findings of the trial court Wendy is, independent from the child-support issue, entitled to continued and increased alimony.

Victor also argues that the trial court erred in awarding $3000 in attorney's fees and expenses in favor of Wendy. Arkansas Code Annotated section 9-12-309(b) (Repl. 2002) provides that a court may allow either party additional attorney's fees for the enforcement of alimony. Victor contends that his motion to terminate alimony and Wendy's counter motion to continue and increase alimony does not fall within the purview of that statute. We disagree. There was only one issue in this case — whether Wendy was entitled to alimony. We also note that the trial court has great discretion on the issuance of an attorney's fee award in alimony cases. *McKay*, 340 Ark. at 183, 8 S.W.3d at 532. Therefore, we cannot say that the trial court abused its discretion in awarding attorney's fees to Wendy, and we affirm the award.

Affirmed.

PITTMAN, C.J., and HART, BIRD and HEFFLEY, JJ., agree.

GLADWIN, GRIFFEN, GLOVER and MILLER, JJ., dissent.

R OBERT J. GLADWIN, Judge, dissenting. Today the majority expands the definition of alimony to include child support. Because I believe that the trial court erred in finding a change of circumstances and that there was insufficient evidence to continue the payment of alimony beyond the period specified in the divorce decree, I would reverse.

The evidence presented in this case centers on the parties' middle child, Jacqueline, who has cerebral palsy and is completely dependent on others to give her assistance in eating and personal care. She is cognitively alert, but is only able to use part of the right side of her body enough to drive a power wheelchair and to use a computer with one finger. She is now twenty years old and attending the University of Central Arkansas, where she has a 3.0 grade-point average. She lives on campus and is able to pay personal caregivers from a Medicaid-sponsored program called Independent Choices. Appellant was instrumental in discovering this particular funding and was also able to help her obtain social-security payments. Jacqueline returns home on weekends, and appellee is in charge of caring for Jacqueline's personal needs during her visits. Jacqueline has also arranged for a personal caregiver to assist her periodically on the weekends. Depending on the number of hours used by outside caregivers, appellee is sometimes paid by the Medicaid program for her care of Jacqueline.

In 2004, appellant sought modifications of the divorce decree and both parties filed contempt motions against the other. Among other things, the trial court found, that because of Jacqueline's physical disabilities, child support would continue beyond her eighteenth birthday. However, the parties agreed that appellant's child-support obligation for Jacqueline would abate as of May 1, 2004, due to the government assistance she began receiving. Further they agreed that either party could petition the court for reinstatement of child support if Jacqueline were ever denied government assistance.

On March 20, 2006, appellant filed a motion to terminate child support and alimony effective upon the youngest child's high school graduation as provided in the 2002 divorce decree. Appellee filed a counter-petition seeking both a continuation of and an increase in alimony. After a hearing, the trial court entered an order finding that, among other things:

8. The substanial change in circumstances includes the following:

a. The Defendant's (appellant) annual income increased by at least $10,000 since the entry of the Divorce Decree and the Plaintiff's (appellee) annual income increased by at least $5,000 since the entry of the Divorce Decree.

b. The Defendant (appellant) received a $30,000 bonus from his employer.

c. The child support for Jacqueline has been abated. The Plaintiff (appellee) anticipated at the time of the divorce that she would be receiving child support payments to assist in Jacqueline's care and to provide her a home. Plaintiff (appellee) is not receiving child support payments to assist her in the care of Jacqueline, who is an adult and who is in need of care because of her disability.

d. Jacqueline is attending college.

e. Defendant (appellant) is not paying any child support for Jacqueline and therefore has a higher level of income than he anticipated at the time of the divorce.

f. Plaintiff (appellee) provides a substantial amount of care for Jacqueline.

g. Either of the parties could have chosen to provide the care for their adult daughter, who is in need of substantial care, however, the party who provided the care for Jacqueline was Plaintiff (appellee).

The trial court further found that even though appellee has a male friend in the house a substantial amount of time who does not pay expenses, he nonetheless contributes to the home by assisting appellee with lifting Jacqueline and other tasks. The trial court also found that it was not in Jacqueline's best interest for the appellee to move from her current residence, and that Jacqueline has a total inability to care for herself. The trial court considered the tax effects of the alimony payments on both parties, and found that appellant's income was $1,184.55 per week and appellee's income was $512 per week. The trial court then awarded alimony to the appellee in the amount of $1150 per month effective June 1, 2006, and awarded attorney's fees to appellee in the amount of $3000.

The purpose of alimony is to rectify economic imbalance in the earning power and the standard of living of the parties to a divorce in light of the particular facts of each case. *Harvey v. Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988). Modification of an award of alimony must be based on a change of circumstances of the parties. *Herman v. Herman*, 335 Ark. 36, 977 S.W.2d 209 (1998). The burden of showing a change in circumstances is always upon the party seeking the change in the amount of alimony. *Hass v. Hass*, 80 Ark. App. 408, 97 S.W.3d 424 (2003). Changes in circumstances are not material if they were contemplated at the time of the original award. *Id.*

The primary factors to be considered in changing an award of alimony are the needs of one party and the ability of the other party to pay. *Parker v. Parker*, 97 Ark. App. 298, 248 S.W.3d 523 (2007). Secondary factors that may also be considered include (1) the financial circumstances of both parties; (2) the couple's past standard of living; (3) the value of jointly owned property; (4) the amount and nature of the income, both current and anticipated, of both parties; (5) the extent and nature of the resources and assets of each of the parties; (6) the amount of each party's spendable income; (7) earning ability and capacity of both parties; (8) the property awarded to each party; (9) the disposition of the homestead or jointly owned property; (10) the condition of health and medical needs of the parties; (11) the duration of the marriage. *Delacey v. Delacey*, 85 Ark. App. 419, 155 S.W.3d 701 (2004). Each case is to be judged upon its own facts. *Id.* Discretion is vested in the trial judge, and we will not reverse absent an abuse of discretion. *Id.*

The only findings made by the trial court in paragraph eight concerning the parties is that appellant's and appellee's income both increased and that appellant received a one-time bonus from his employer. The other findings use the term "child support" or refer specifically to Jacqueline. The finding under paragraph nine is that appellee has a male friend in the house who does not pay expenses. None of these findings present a change in circumstances that warrants an extension of appellant's alimony obligation.

The majority focuses on the fact that appellant has had an increase of income. The fact that appellant enjoys a greater income is not a material change in circumstances. An increase in a payor's income alone does not warrant an increase in alimony. *See Parker*, 97 Ark. App. 298, 248 S.W.3d 523 (2007).

None of the other findings that were made by the trial court about Jacqueline were unexpected, and therefore, would not support an increase in alimony. The child support for Jacqueline was abated by agreement of the parties so that she could obtain government assistance. The fact that Jacqueline needs additional assistance was also expected, which is why the trial court extended child support for Jacqueline past her eighteenth birthday. Neither the fact that Jacqueline needs a handicapped-accessible house nor that appellee is her primary caregiver is a change of circumstances. These factors existed in 2002 at the time of the divorce as well as in 2004 when the modification was entered.

Further, the fact that Jacqueline now attends college does not constitute a change in circumstances. The fact that she spends the majority of her time living on campus actually reduces the appellee's daily burden. The abatement of child support in exchange for the government assistance was agreed to by the appellee so it should not be considered a changed circumstance. If anything, it supports the notion that the award is for Jacqueline's benefit, and is not alimony.

All of the factors set out by the court in support of a material change in circumstances are circumstances concerning Jacqueline. These factors support the trial court's earlier finding that Jacqueline's child support should continue. However, the trial court and the majority call this increase alimony, even though it is very clearly child support based on Jacqueline's needs, and not appellee's.

As I would find that the trial court was clearly erroneous in finding a change in circumstances, a reversal on the attorney's fees issue would also be necessary.

GRIFFEN, GLOVER, and MILLER, JJ., agree.

WENDELL L. GRIFFEN, Judge, dissenting. I fully join Judge Gladwin's dissenting opinion. Nonetheless, I write separately to further expose the obvious factual and legal gaps in the decision announced by the majority opinion.

I would reverse the trial court's order because appellee, Wendy Bettis, failed to show a change of circumstances warranting an increase and extension in alimony. In stating that "there was only one issue in this case — whether Wendy was entitled to alimony," the majority precisely pinpoints the flaw in its own

analysis — it repeats and compounds the trial court's error in treating Wendy's request for *increased alimony to pay her mortgage due to her reduction in child support* as anything other than a guise for an *increase in child support.*

Wendy requests alimony — not child support — until her adult disabled daughter, Jacqueline Bettis, is able to live independently, but admitted that she does not know whether Jacqueline will ever be able to do so. Hence, the trial court's order essentially obligates the father, Victor Bettis, to pay alimony as long as Jacqueline, a college student who lives outside the home most of the time, resides with Wendy in the current home. In citing to Wendy's ability to pay the mortgage as a "significant" factor in affirming the trial court's order, the majority vividly demonstrates that its decision is based on *Jacqueline's* needs, not Wendy's. In short, the majority converts child support into alimony.

It is true that Victor has enjoyed a $10,000 annual increase in his salary, whereas Wendy's salary has increased by only $5100 during that same period of time. However, even considering Victor's increase in income, there are no factors supporting that an increase in alimony is warranted. An increase in a payor's income, alone, does not warrant an increase in a alimony. *See Parker v. Parker*, 97 Ark. App. 298, 248 S.W.3d 523 (2007). Nor does the fact that Victor now enjoys a "greater" income *because* his child-support obligation has abated, an increase that will necessarily result whenever a payor's child-support obligation abates.[1]

The majority additionally cites as changed circumstances warranting an increase in alimony only the following facts: Wendy did not anticipate that Jacqueline's child support would be abated so that Jacqueline could receive government benefits or that Jacqueline would be able to attend college. The majority goes even farther and boldly states that these facts *alone* demonstrate a significant change in circumstances warranting an increase in alimony. This assertion is plainly belied by the record.

Although Wendy now cites to the abatement of *Jacqueline's* child support as a changed circumstance, her request for increased alimony, in fact, was based on the abatement of *Evan's* child

---

[1] Victor received a $30,000 bonus prior to the entry of the 2004 order from which no child support or alimony was paid, but the trial court addressed the bonus issue in the 2004 decree, stating that Wendy would receive 15% of any *future* bonus as child support.

support when he graduated from high school. Wendy has known since the original decree was entered in 2002 that her alimony would cease in 2006 when Evan was scheduled to graduate from high school. Thus, the abatement of Evan's child support cannot constitute a changed circumstance that warrants an increase in alimony. If that is so, every alimony payee can petition for greater alimony whenever child-support payments cease. If the majority intends for that to be the law, it should say so.

Further, the abatement of Jacqueline's child support does not constitute a changed circumstance warranting an increase in alimony. The trial court accounted for the special circumstances of Jacqueline's physical condition in awarding child support past her eighteenth birthday; the parties did so in setting up a special account to cover Jacqueline's needs that are not met by her government benefits. The original decree and the 2004 decree stated that Jacqueline's child support would extend beyond her eighteenth birthday; however, the 2004 order abated Jacqueline's child support as of May 1, 2004, and provided that child support could be reinstated if Jacqueline was denied governmental benefits. *Wendy has never filed a petition to have Jacqueline's child support reinstated. Wendy agreed to abate child support and, Jacqueline's disabilities notwithstanding,* the majority opinion does not explain how — or why — a party should be allowed to mount a collateral attack on her own agreement to abate child support to justify an increase in alimony.

Plainly, Jacqueline is not without recourse to meet her special needs because the parties have been well-aware of her needs since her infancy and have provided a means — *other than* child support or alimony — to meet those needs. The majority opinion does not mention that the parties agreed in the 2004 order to establish a joint account for Jacqueline's expenses "over and above any governmental assistance she receives," with Victor paying two-thirds of the expenses, and Wendy paying one-third. The initial amount to be paid was $250 per week, and either party is permitted to petition the trial court to modify the amount. *Notably, this provision is not conditioned on the receipt of child support or alimony.* The 2004 order further stated, "The parties anticipate that they may need to fund the account beyond graduation from college due to Jacqueline's disability." Wendy does not assert that this provision is inadequate to meet Jacqueline's current needs. She

has never petitioned the court to modify this term of the order. Instead, she asks for an unwarranted increase in alimony.[2]

It is true that the parties did not anticipate that Jacqueline would be able to attend college. However, simply because a circumstance was unanticipated does not justify an increase in alimony. Glaringly absent from the majority's opinion is any explanation linking Jacqueline's college attendance to Wendy's entitlement to increased alimony. The fact that Jacqueline attends college does not warrant an increase in alimony because Jacqueline's financial needs for college are either paid by scholarships or by Jacqueline herself. There was no evidence that Wendy incurred any expenses as a result of Jacqueline attending college. In fact, Wendy testified that the only expenses she incurred relating to Jacqueline were household expenses, which cannot be attributed to the fact that Jacqueline attends college (and which, in any event, are presumably lessened because Jacqueline no longer lives with Wendy full-time, as she did when the parties were divorced). It is inconceivable that Wendy's alimony should be increased merely because her adult daughter attends college and fully pays her own expenses related thereto. While Wendy does occasionally assist Jacqueline with her course work, the majority does not explain how that fact entitles Wendy to increased alimony.

I am sympathetic to Jacqueline's needs and special circumstances. However, the means by which those needs should be addressed is not an increase and extension of alimony to her mother. While Wendy laudably keeps Jacqueline at home, she is not legally entitled to receive alimony for doing so. Nor is Victor legally obligated to pay *alimony* to assure that Wendy remains able to pay her mortgage, any more than any other payor is obligated to ensure that a payee is financially able to afford the marital home once the children reach majority.

---

[2] Neither the fact that Jacqueline needs a handicapped-accessible home nor Wendy's position as Jacqueline's primary caretaker constitutes a changed circumstance because those circumstances existed before the parties divorced. In fact, Wendy devotes *less* time to Jacqueline's care than when the decree was entered because then, she was required to regularly assist Jacqueline during week nights when her daughter was in high school. Now, while Jacqueline is away at college, Wendy is required to only occasionally assist her daughter during the week. Further, Wendy's boyfriend, who contributes no financial support but assists with Jacqueline, lives with Wendy "full time." In addition, during at least part of the summer, a caretaker lives with them to assist with Jacqueline's needs.

The majority opinion provides no guidance at all to trial judges or litigants about how its decision will be applied in other alimony cases. Thus, it is impossible to know, let alone reasonably predict, whether trial judges will be upheld if they grant requests for increased alimony in similar situations, different situations, or if this case is somehow a special phenomenon in the law. The majority opinion cites no decision by the Arkansas Supreme Court that is even remotely analogous to the unprecedented result in this case. As much as one may admire the concern expressed for Jacqueline in the majority opinion, the decision is an unwarranted departure from the well-established principles our courts have followed for awarding alimony.

Accordingly, I would reverse the trial court's order increasing and extending Wendy's alimony.