SLIP OPINION

Cite as 2015 Ark. App. 86

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-14-419

| | | |
|---|---|---|
| | | Opinion Delivered FEBRUARY 11, 2015 |
| RONALD BEGGS | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTEENTH DIVISION [NO. 60DR-06-39] |
| V. | | |
| | | HONORABLE RICHARD MOORE, JUDGE |
| ELIZABETH M. BEGGS | APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Ronald Beggs appeals from the trial court's denial of his motion to modify alimony.[1] On appeal, Mr. Beggs asserts that there was a reduction in his income and that the trial court erred in refusing to reduce his alimony obligation to his ex-wife, Elizabeth Beggs. We affirm.

The purpose of alimony is to rectify economic imbalance in the earning power and the standard of living of the parties to a divorce in light of the particular facts of each case. *Bettis v. Bettis*, 100 Ark. App. 295, 267 S.W.3d 646 (2007). Modification of an award of alimony must be based on a change of circumstances of the parties. *Id.* The burden of showing a change in circumstances is always upon the party seeking the change in the amount of

---

[1] The first time this appeal was submitted we remanded the case to supplement the record with the parties' divorce decree. *See Beggs v. Beggs*, 2014 Ark. App. 706. The record has now been supplemented.

alimony. *Hass v. Hass*, 80 Ark. App. 408, 97 S.W.3d 424 (2003). The primary factors to be considered in changing the award of alimony are the needs of one party and the ability of the other to pay. *Parker v. Parker*, 97 Ark. App. 298, 248 S.W.3d 523 (2007). Each case is to be judged on its own facts, and we will not reverse absent an abuse of discretion by the trial court. *Id.*

Mr. Beggs and Ms. Beggs were divorced by a decree entered on December 29, 2006. The divorce decree awarded Ms. Beggs custody of the parties' two minor children and ordered Mr. Beggs to pay child support. At the time of the divorce, the trial court found that Mr. Beggs's net monthly income was $23,318, and that other than some brief sporadic work Ms. Beggs had not worked outside of the home for more than seventeen years. The trial court ordered Mr. Beggs to pay Ms. Beggs $4500 in monthly alimony, which would increase to $5500 monthly upon the parties' oldest child graduating from high school. The alimony was to continue until Ms. Beggs reached the age of sixty-two. Since entry of the divorce decree, both of the parties' children have graduated from high school and Mr. Beggs's child-support obligation has expired. The current alimony obligation is $5500 monthly.

On March 24, 2013, Mr. Beggs filed a motion to modify alimony. In his motion, Mr. Beggs alleged that his income has substantially decreased through no fault of his own, and that Ms. Beggs had gained full-time employment.

At the hearing on his motion, Mr. Beggs testified that at the time of the parties' divorce he worked as a project estimator for a construction company called Flynco. Mr. Beggs owned one-third of Flynco's stock, and his brother David Beggs (hereinafter

referred to as "David") was the president and majority stockholder of the company. Mr. Beggs's salary as project estimator was approximately $80,000 to $100,000 per year. However, the bulk of his income arose from annual bonuses based on his contributory stock ownership, which was dependent on his continued employment at Flynco. Mr. Beggs testified that his total annual income from Flynco was between $500,000 and $600,000 at the time of the divorce, and that it subsequently increased to about $864,000 per year.

Mr. Beggs's employment with Flynco terminated in June of 2011. This resulted from a personality conflict between Mr. Beggs and his brother David, and their disagreement on how to run the business. Mr. Beggs was unhappy about David using company funds to make personal purchases, and David testified that Mr. Beggs had a temper problem and was emailing and Facebooking more than he was working. As a result of the brothers' irreconcilable differences, David terminated Mr. Beggs's employment with Flynco and agreed to purchase his stock. According to David, Mr. Beggs asked to be bought out and David purchased Mr. Beggs's stock for $1,184,700.

Mr. Beggs testified that, after his termination from Flynco, he had planned to start another construction company but changed his mind due to the poor economy. Mr. Beggs stated that he lacked any formal education in construction management and was not qualified to work as a project manager for another construction company. In December 2012, Mr. Beggs bought some farmland and planned on operating a farm to provide a living.

Mr. Beggs testified that he currently earned approximately $60,000 in annual investment income. Mr. Beggs stated that he had about $1,000,000 in assets at the time of

SLIP OPINION

the divorce, and that he now has $3,300,000 in assets. Mr. Beggs also testified that he has zero debt.

Ms. Beggs testified that since the divorce she has obtained employment as a data specialist at a hospital earning $754 biweekly. Ms. Beggs stated that she has IRA accounts valued at about $201,000 and about $31,000 in stocks and bonds, but that she owes $109,000 on her house.

On January 22, 2014, the trial court entered an order denying Mr. Beggs's motion to modify alimony. In its order, the trial court found that Mr. Beggs did not prove a material change in circumstances through no fault of his own, citing the fact that Mr. Beggs asked to be bought out of his interest in Flynco. The trial court also found that Mr. Beggs's assets had significantly increased in value since the parties' divorce, and that he failed to pursue any income-producing employment since his separation from Flynco. Further, the trial court found that Ms. Beggs continued to have a need for the alimony.

In this appeal, Mr. Beggs argues that there was a significant change in circumstances since the divorce and that the trial court erred in denying his motion to reduce his alimony. Mr. Beggs contends that his brother David forced him to accept a stock buyout, which essentially rendered the termination of his employment at Flynco an involuntary act. Mr. Beggs further asserts that, even if his separation from employment could be deemed voluntary, the trial court erred in failing to consider the fact that this reduction in income was not done for the purpose of reducing his alimony obligation. Citing *Bendinelli v. Bendinelli*, 2012 Ark. App. 127, appellant states that the law distinguishes between a voluntary act causing

a reduction in income and purposely reducing income to reduce support.[2]  Mr. Beggs contends that his relationship with David had deteriorated to where he had no choice but to sell his stock to David, thereby discontinuing his employment and the lucrative annual bonuses generated by the employment.  Mr. Beggs further assigns error in the trial court's failure to properly consider the increase in Ms. Beggs's income and IRA accounts since the time of the parties' divorce.

Even though Mr. Beggs is no longer employed at Flynco, he received $1,184,700 from the sale of his Flynco stock.  Mr. Beggs acknowledged in his testimony that his assets have increased from $1,000,000 to $3,300,000 since the time of the parties' divorce, that he has no debt, and that he continues to earn investment income from which the $5500 in monthly alimony can be paid.  One of the factors that may be considered in determining the amount of alimony or whether to change an award of alimony is the extent of the parties' resources and assets.  *See Mitchell v. Bass*, 2009 Ark. App. 640.  Although Mr. Beggs was not working at the time of the hearing, the trial court properly considered the fact that Mr. Beggs was capable of future employment.  And while Ms. Beggs was employed, her earnings and income potential were comparatively low.  Ms. Beggs is fifty-two years old, and pursuant to the terms of the divorce decree appellant's alimony obligation will expire in ten years.

In summation, we conclude that the issues of whether the appellant's termination of his employment was voluntary or involuntary, or whether appellant was free from fault, are

---

[2]We observe that *Bendinelli* distinguishes itself from this case in that it involved a reduction in child support, which was granted in part based on the payor's reduced income on account of his conviction for a felony.

not determinative. Although Mr. Beggs's annual earned income has decreased since the time of the divorce, there is no evidence that his ability to pay the court-awarded alimony has decreased. In fact, Mr. Beggs's assets from which he can pay alimony have increased from $1,000,000 to $3,300,000 at the time of his motion. Further, from the evidence presented it remains evident that Ms. Beggs still has a need for the existing alimony. On this record, we hold that the trial court committed no abuse of discretion in denying appellant's motion to modify the alimony.

Affirmed.

GLADWIN, C.J., and VIRDEN, J., agree.

*Holleman & Associates, P.A.*, by: *Maryna O. Jackson*; and

*Dodds, Kidd & Ryan*, by: *David W. Kamps*, for appellant.

*Dover Dixon Horne PLLC*, by: *Gary B. Rogers*, for appellee.